UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul Eugene MASON, Defendant–
Appellant.

No. 93–5520.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 9, 1994.

Decided May 9, 1995.

**ARGUED:** Robert Thomas Vaughn, Nashville, TN; William D. McNaull, Jr., Charlotte, NC, for appellant. Gretchen C.F. Shappert, Asst. U.S. Atty., Charlotte, NC, for appellee. **ON BRIEF:** Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.

Before RUSSELL and MOTZ, Circuit Judges, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Reversed by published opinion. Senior Judge LAY wrote the opinion, in which Judge RUSSELL and Judge MOTZ joined.

## OPINION

LAY, Senior Circuit Judge:

Paul Eugene Mason was convicted of importation and sale of drug paraphernalia and participation in drug distribution conspiracies in violation of federal law.[1] After his conviction, Mason was released pending the completion of the forfeiture phase of his trial, scheduled for the following morning. Before the commencement of the forfeiture proceedings, Mason attempted suicide in his parked van outside the courthouse by plunging a ten-inch butcher knife into his chest. He survived two major surgeries.

Following motions filed by both the defense and the Government for a competency hearing, the district court ordered a psychological examination of Mason pursuant to 18 U.S.C. § 4244(b), which authorizes an evaluation to determine a convicted defendant's competency to be sentenced. This examination was conducted at the Federal Correctional Institute in Butner, North Carolina ("FCI Butner"). By letter filed with the court, on February 16, 1993, the warden informed the court that the psychological evaluation showed that Mason was suffering from a mental disease or defect for which he required care and treatment. Although the

---

1. In an eleven-count superseding bill of indictment, filed August 27, 1992, Mason was charged with sale of drug paraphernalia, use of the mails to transport drug paraphernalia, and importation of drug paraphernalia in violation of 21 U.S.C. § 857 (repealed Nov. 29, 1990), 21 U.S.C. § 863, 18 U.S.C. § 2, and 18 U.S.C. § 545. He was also charged with conspiracy to possess with intent to distribute and distribution of a quantity of cocaine, heroin, and marijuana in violation of 21 U.S.C. § 841(a) and 21 U.S.C. § 846. The Government also included a criminal forfeiture count under 21 U.S.C. § 846 and 21 U.S.C. § 853(p). Mason was convicted of all but two of the counts included in the indictment.

defendant's original motion did not specify whether a hearing should be held on Mason's competency to stand trial during the first phase of the trial, the Government's motion requested a hearing to determine whether Mason was competent to proceed with the forfeiture trial as well as a specific request for an evaluation to determine whether Mason was insane at the time of the commission of the offenses with which he was charged. On the same date that the warden's letter was filed with the court, the defendant filed a motion for a new trial based on his alleged incompetence during the first phase of the trial and requested a hearing to present evidence on this motion.

On February 22, 1993, the district court held a hearing to determine Mason's competence to proceed to the forfeiture phase of the trial and to sentencing. At that time, defense counsel orally moved for a competency hearing to determine Mason's competence during the first phase of the trial. The court denied that motion, as well as the defendant's motion for a new trial. The court ordered Mason be placed in the custody of the Attorney General to determine his present mental condition pursuant to 18 U.S.C. § 4244.[2]

Defense counsel filed a renewed motion for a new trial or for a hearing to determine Mason's competence during the first phase of the trial on April 9, 1993, and submitted an affidavit in support of that motion.[3] The district court denied the motion for substantive reasons, although it found the motion untimely. On April 20, 1993, defense counsel filed a third motion for a new trial or for a retrospective competency hearing, which was similarly denied. In its final order denying the motions, the court threatened defense counsel with sanctions if they raised the issue again.

By letter dated April 27, 1993, the warden at FCI Butner informed the court that Mason no longer suffered from a mental disease or defect that would prevent him from proceeding to the forfeiture phase of the trial and to sentencing. A hearing was held on May 20, 1993, and the court determined Mason was competent to continue. The forfeiture and sentencing proceedings took place on June 28, 1993. This appeal followed.

## ANALYSIS

On appeal, the defendant raises three issues: (1) the sufficiency of the indictment; (2) the authority of the United States Customs Service to search his place of business; and (3) whether the district court abused its discretion in failing to provide him with an evidentiary hearing to determine whether he was competent during the first phase of his trial. We find no merit to the first[4] or

---

2. The court *sua sponte* amended that order on February 23, 1993, indicating Mason should be remanded to the custody of the Attorney General pursuant to 18 U.S.C. § 4241, rather than § 4244. Section 4244 concerns a defendant's competence to be sentenced, whereas § 4241 relates to competence to stand trial. The court deemed § 4241 applicable because Mason had yet to be tried on the forfeiture counts.

3. Mason was represented by two attorneys, William McNaull and Robert Vaughn. McNaull filed an affidavit with the district court claiming that on January 14, 1993, Dr. Kevin McBride, one of Mason's examining physicians at FCI Butner, telephoned McNaull and during the course of the conversation told McNaull that in his professional opinion, Mason had not been competent during the first phase of the trial. McNaull also alleged that McBride told him that this opinion was shared by Dr. Cathy Williams, the other evaluating physician at FCI Butner. According to the affidavit, McBride told McNaull that he could not include that information in the report because administrative procedures at FCI Butner dictated that he could only submit infor-

mation on the specific issue presented by the court. Defense counsel Vaughn also submitted to the court on April 20, 1993, an affidavit stating that on March 1, 1993, an attorney representing FCI Butner informed Vaughn by telephone that neither Dr. McBride nor Dr. Williams would be permitted to give an opinion about Mason's competence during the first phase of the trial absent a court order requesting or permitting the testimony.

4. Mason urges the indictment against him should have been quashed because it did not contain any scienter element for the sale of drug paraphernalia in violation of 21 U.S.C. § 857 (repealed Nov. 29, 1990), and 21 U.S.C. § 863. At the time Mason was indicted, the circuits were split as to whether the scienter requirement in the drug paraphernalia statutes was an objective standard, subjective standard, or some mix of the two. The Supreme Court recently determined that an objective standard applies in *Posters 'N' Things, Ltd. v. United States*, — U.S. —, —, 114 S.Ct. 1747, 1752, 128 L.Ed.2d 539 (1994). The issue had not been resolved in this Circuit

second[5] claim raised by the defendant. We now more fully address Mason's challenge to the district court's refusal to grant a competency hearing to determine his competence during the first phase of the trial.

■ The conviction of a defendant when he is legally incompetent is a violation of due process. *Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). The test for mental competence is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

■ Congress has safeguarded this right by providing that trial courts conduct competency hearings under the following circumstances:

At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there

is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a). The district court must *sua sponte* order a competency hearing if reasonable cause is demonstrated. *United States v. Fuller*, 15 F.3d 646, 649 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2689, 129 L.Ed.2d 820 (1994); *Hernandez–Hernandez v. United States*, 904 F.2d 758, 760 (1st Cir.1990). Whether reasonable cause exists under § 4241 is a question left to the discretion of the trial court. *United States v. West*, 877 F.2d 281, 285 n. 1 (4th Cir.), *cert. denied*, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); *Streetman v. Lynaugh*, 835 F.2d 1521, 1525–26 (5th Cir.1988). This case thus requires us to determine whether the district court abused its discretion in determining no reasonable cause existed to order a § 4241 competency hearing. Under the abuse of discretion standard, this Court may not substitute its judgment for that of the district court; rather, we must determine whether the court's exercise of discretion, considering the law and the facts, was arbitrary or capricious. *James v. Jacobson*, 6

when Mason was indicted. Mason claims that because the Government did not specify in the indictment which standard applied, he was forced to trial without knowing the nature of the charges against him. This argument is without merit. The language in the indictment tracked the statutory language. In *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), the Supreme Court stated "that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id.* In the context of a continuing criminal enterprise conviction under 21 U.S.C. § 848, we have held that an indictment that tracks the language of the statute is sufficient. *United States v. Amend*, 791 F.2d 1120, 1125 (4th Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986). We find the indictment was sufficient to fairly apprise Mason of the charges against him and to enable him to defend against them.

5. Mason also claims the items of drug paraphernalia seized from his place of business should

have been suppressed because the United States Customs Service was not authorized to execute the search warrant which led to their discovery. We need not discuss whether the Customs Agents in this case were in fact authorized to conduct the search because we find that, even if they were not, Mason is not entitled to suppress evidence as a result of the alleged violation. The fact that a Customs Agent who was not technically authorized to conduct the search did so does not rise to the level of a constitutional violation warranting suppression of the evidence seized at Mason's place of business under these circumstances. *See, e.g., United States v. DiCesare*, 765 F.2d 890, 897 (refusing to suppress evidence even though customs official allegedly lacked authority to conduct search because authorized agents participated in the investigation and execution of the warrants), *as amended*, 777 F.2d 543 (9th Cir.1985); *United States v. Harrington*, 681 F.2d 612, 614–15 (9th Cir.1982) ("[A] court should not automatically suppress evidence seized by an officer who, for some technical reason, should not have conducted the search.").

F.3d 233, 239 (4th Cir.1993). One of the ways in which a district court may abuse its discretion is in applying erroneous legal principles to the case. *Id.*

■ The district court found that the rule of law governing its determination of whether to grant a competency hearing was the standard outlined in *United States v. Teague,* 956 F.2d 1427 (7th Cir.1992). In *Teague,* the defendant's trial counsel *never* raised the issue of competency in the trial court and appellate counsel raised the issue for the first time on appeal. The Seventh Circuit held that "where the issue of the defendant's mental competency to stand trial was not raised in the trial court, *in order to justify a retrospective competency hearing, the appellant 'must present facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental competence." ' "  Id.* at 1431–32 (emphasis added) (quoting *United States v. Collins,* 949 F.2d 921, 927 (7th Cir.1991)). With all due respect to the court below, we find that the application of this strict standard rather than the reasonable cause standard in § 4241, was a fundamental error of law. *Teague* is inapposite here because Mason's trial counsel did raise the issue of competency in the trial court, albeit after the first phase of the trial. The terms of § 4241 indicate that the defendant's competence may be raised "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant...."  18 U.S.C. § 4241(a). Thus, the standard in § 4241 governs whether the competency issue is raised before or after trial. *See United States v. Renfroe,* 825 F.2d 763, 766–67 (3d Cir.1987) (applying § 4241 "reasonable cause" standard even though facts calling into question the defendant's competence to stand trial were not discovered until post-trial proceedings).

■ In determining whether there is reasonable cause to order a competency hearing, a trial court must consider all evidence before it, including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence. *See Drope,* 420 U.S. at 180, 95 S.Ct. at 908; *Fallada v. Dugger,* 819 F.2d 1564, 1568 (11th Cir.1987); *Thompson v. Blackburn,* 776 F.2d 118, 123 (5th Cir.1985). "[E]ven one of these factors standing alone may, in some circumstances, be sufficient." *Drope,* 420 U.S. at 180, 95 S.Ct. at 908. Medical opinions are "usually persuasive evidence on the question of whether a sufficient doubt exists" as to the defendant's competence. *Griffin v. Lockhart,* 935 F.2d 926, 930 (8th Cir.1991). The trial court must "look at the record as a whole and accept as true all evidence of possible incompetence" in determining whether to order a competency hearing. *Smith v. Ylst,* 826 F.2d 872, 877 (9th Cir.1987), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988).

In light of this standard, we examine the evidence of incompetence before the trial court. The defendant was convicted on November 5, 1992, after a four-day trial. The suicide attempt occurred on the morning of November 6, 1992. We deem it significant that even the Government filed a motion at that time, under § 4241, seeking a competency hearing to determine whether Mason was insane at the time of the commission of the offenses for which he was charged. Thereafter, pursuant to the court's order, the medical evaluation at FCI Butner was completed in February 1993, and Mason's physicians found he was currently suffering from a mental disease or defect. The report issued by FCI Butner, although expressing no opinion on Mason's competence during the first phase of the trial, indicates that Mason's psychological problems predated his suicide attempt.

The February 1993 letter issued by the warden indicated that Mason suffered from "a mental disease or defect" which required "a lengthy period of psychotherapy, possibly augmented with medication." In discussing Mason's affective disorder, the report accompanying the warden's letter indicated that prior to the suicide attempt Mason "displayed a depressed mood, recurrent thoughts of death, diminished ability to concentrate, and feelings of worthlessness." Forensic Report from FCI Butner at 7, filed February 16, 1993. The report included family members' concerns that they were unable "to effectively communicate" with Mason and

noted Mason's "gradual loss of interest in all activities associated with his occupation and family life." *Id.* Mason's "chronic disturbance of mood" had lasted *"for an extended period of years possibly up to two years." Id.* (emphasis added).

The report detailed Mason's alcohol abuse which also "has been severe over the last few years." *Id.* His alcohol consumption "included at least 3/4 of a fifth of Scotch and a six pack of beer daily." *Id.* at 3. Symptoms of this alcohol abuse include "alcoholic blackouts in which he carries on activities which he is unaware of, the inability to concentrate, and persistent memory loss."[6] *Id.* at 3–4. In addition, the Government's motion for a competency hearing to determine Mason's competence at the time he committed the crimes with which he was charged cites as one of the reasons for the motion that Mason has a history of excessive alcohol consumption.

As early as April 1993, the court had before it the affidavits of defense counsel indicating that both of Mason's treating physicians at FCI Butner believed he was incompetent during the first phase of the trial. These affidavits also recounted difficulties defense counsel experienced in obtaining Mason's cooperation in preparing for trial. Defense counsel noted their lack of expertise in determining whether Mason was incompetent and thus their failure to raise the issue be-

fore the first phase of the trial. In addition, defense attorney McNaull's affidavit noted that the Government's motion for an examination of the defendant's pre-trial competency was also pending.

Having outlined the evidence indicating Mason's incompetence during the first phase of the trial, we next consider the court's response to the motions. At the outset, we note that the defendant's motions requested a new trial or a competency hearing to determine Mason's competence during the first phase of the trial. Although each defense motion requested a hearing to determine Mason's competence during the first phase of the trial, the court treated each motion except the final one exclusively as a motion for a new trial, and examined the motions under the standards applicable to the grant of a new trial only.[7] Moreover, in the court's final order denying both the motion for a new trial and motion for a retrospective competency hearing, as previously discussed, the court erroneously applied the *Teague* standard to the motion for a retrospective competency hearing.

The court offered the following rationale for denying the defense motions. In the district court's first order, the court denied the motion on the grounds that the defendant's demeanor during trial did not exhibit symptoms of mental incompetence and that defense counsel did not raise the mental

---

6. This report on Mason's psychiatric health was the only one before the district court when it ruled on the motions of the defendant for a retrospective competency hearing. We note, however, that the second report issued from FCI Butner even more clearly indicates Mason's severe alcohol abuse during the first phase of the trial. The report states:

> In 1992, following the onset of his legal problems[Mason] increased his weekly consumption of alcohol to five to six fifths of Scotch and three cases of beer. At the time of his trial in November, 1992 he estimates that he was drinking a fifth of Scotch per day along with one to two six-packs of beer.

Forensic Report from FCI Butner at 4, filed April 29, 1993. This report was filed with the district court before Mason was sentenced on June 28, 1993. As previously discussed, § 4241 requires the district court to *sua sponte* order a competency hearing at any time before the defendant is sentenced if there is reasonable cause to suspect the defendant's incompetence. At Mason's sentencing hearing, he told the court that during the

trial he had been very drunk. The court responded, "Now the fact that you were drunk during the trial, I didn't know it. Counsel also made no mention of it. I had no way of knowing that you were drinking, much less drunk during the trial." Transcript of Sentencing Proceedings at 53, *United States v. Mason*, No. 3:92CR159–01–P (W.D.N.C. June 28, 1993).

7. In its second order denying the defense motions for a new trial and for a retrospective competency hearing, the court stated, "Defendant has requested a new trial. Accordingly, the applicable standard is that which governs requests for a new trial, not the standard which governs a determination of mental incompetency." Joint App. at 83. We do not address whether the court abused its discretion in denying the motions for a new trial. We address only whether the court abused its discretion in denying the separate motions for a competency hearing.

competence of the defendant as an issue until after his suicide attempt. The court noted that "[t]he fact that he tried to take his life might have been caused by a mental illness but then again it might not have been so caused." Joint App. at 58.

In the court's second denial of the alternative motions for a retrospective competency hearing or a new trial issued April 20, 1993, the court indicated "the facts contained in this new affidavit permit competing inferences." Joint App. at 84. The court noted that "it does not appear any more reasonable to the court to infer Defendant was mentally incompetent at the time of trial than it does to conclude his suicide was prompted by the guilty verdict." *Id.* The court referred to the affidavits of defense counsel as "riddled .... with hearsay, second guessing, conjecture and self-deprecating regrets." *Id.* at 85.

In the court's final order denying the request for a retrospective competency hearing or new trial, the court, erroneously applying the *Teague* standard, again found defense counsel had given no facts "conclusively" demonstrating incompetence. Moreover, the court found "counsels' representations, taken in context of the events of this case, are unbelievable." Joint App. at 91.

■ We find the court's orders make clear it misapprehended the statutory language and case law applicable to its determination of whether to grant a hearing on Mason's competence during the first phase of the trial. First, the court failed to give any credence to the existing evidence of incompetence before it in considering whether to conduct a competency hearing. While it is clear that the affidavits submitted by defense counsel offered only hearsay statements that Mason's treating physicians at FCI Butner found him incompetent during the first phase of the trial, it is equally clear that defense counsel were unable to get these opinions into the record in any other manner. Under the statutory scheme for psychiatric evaluations of mentally defective defendants, once Mason was admitted to FCI Butner, his attorneys were not able to get independent evaluations of his competency and thus had to rely solely on the government's physicians

at FCI Butner. *See* 18 U.S.C. § 4247(b). These physicians, however, refused to submit to depositions or sign affidavits concerning their opinions about Mason's competence during the first phase of the trial in the absence of a request from the court. Thus, defense counsel were faced with a classic catch-22: The court would not grant a competency hearing until they produced sufficient evidence of incompetence, but until the court granted a competency hearing to which defense counsel could subpoena Mason's treating physicians at FCI Butner, they could not get the evidence of incompetence into the record. Defense counsel informed the court of that situation in affidavits filed with the court. Under these circumstances, the court refused to give any credence to the substance of the affidavits submitted by defense counsel. However, this overlooks that counsel were offering the only evidence available to them: the statements made to counsel by the treating physicians. Outright rejection of these affidavits ignores the fact that counsel for the defense are officers of the court; their statements to the court are subject to disciplinary action if untrue.

The district court cited as a partial basis for denying the motion for a retrospective competency hearing that Mason's suicide attempt was subject to "competing inferences" and did not necessarily indicate Mason was incompetent during the first phase of the trial. In *Drope,* 420 U.S. at 170, 95 S.Ct. at 903, the lower court had determined that, as a matter of law, a suicide attempt did not create a reasonable doubt as to the defendant's competence. The Supreme Court found it unnecessary to rule on that particular proposition, but did hold that when the suicide attempt was considered with other evidence of the defendant's incompetence, it did create a bona fide doubt as to the defendant's competence to stand trial. Similarly, in this case, Mason's suicide attempt is accompanied by medical reports submitted to the court that indicate Mason was suffering from an affective disorder and alcohol dependence during the trial, as well as evidence that two physicians are of the opinion that Mason was not competent during the first phase of the trial.

The district court also noted defense counsel's failure to raise the issue of Mason's incompetence until after the first phase of the trial as a rationale in denying the motion for a competency hearing. In *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966), the Court found the defendant was entitled to a competency hearing although his defense counsel never demanded a hearing on the matter. Moreover, the Court rejected the notion that the fact that the defendant appeared competent and displayed "mental alertness and understanding" during the trial precluded need for a competency hearing. *Id.* at 385, 86 S.Ct. at 842. The Court found that "reasoning offers no justification for ignoring" other evidence of the defendant's incompetence. *Id.* at 385–86, 86 S.Ct. at 842. As in *Pate,* the district court in this case found the defendant's demeanor at the first phase of the trial did not demonstrate any evidence of incompetence. Nevertheless, that fact does not permit the court to ignore medical evidence before it suggesting Mason was not competent during the first phase of the trial.[8]

The orders issued by the district court indicate it in essence made a determination of Mason's competence during the first phase of the trial without the benefit of a competency hearing. This is clearly not permitted under § 4241 which provides for such a hearing upon demonstration of *reasonable cause.* Under the proper reasonable cause standard, the suicide attempt, the information contained in the initial report from FCI Butner, the affidavits submitted by defense counsel stating that defendant's treating physicians believed him incompetent during the first phase of the trial, and the district court's own findings that "the facts ...

permit competing inferences," clearly gave rise to reasonable cause to believe the defendant may have been incompetent during the first phase of the trial. Under these circumstances, the court abused its discretion in denying the defendant's motions for a retrospective competency hearing.

Accordingly, we find the district court abused its discretion in denying the motion for a competency hearing because it erroneously found that the evidence of incompetence must be "conclusive" to justify a hearing, when the court should have evaluated the evidence under the reasonable cause standard.[9] The evidence before the district court unquestionably required a hearing on Mason's competence during the first phase of the trial under § 4241. Although retrospective competency hearings are generally disfavored, *see Drope,* 420 U.S. at 183, 95 S.Ct. at 909, such a determination may be possible where, as in this case, the defendant's treating physicians have already conducted an inquiry into the defendant's competence and formed an opinion as to his competence at the time of the first phase of his trial. *See Renfroe,* 825 F.2d at 767; *United States v. Makris,* 535 F.2d 899, 904 (5th Cir.1976) (finding mental examinations conducted close to the trial date increase probability of adequate *nunc pro tunc* competency determination), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977). We thus remand to the district court for a retrospective determination of Mason's competence during the first phase of his trial. If the district court finds that such a determination is not possible at this stage of the proceedings, it may, as the defendant acknowledges, in the alternative, retry the defendant.

8. As additional justification for failing to grant a retrospective competency hearing, the district court noted the difficulty in conducting an inquiry into Mason's competence at a previous point in time. Although a determination of a defendant's present competence is certainly more easily undertaken than an after-the-fact determination of competence, that rationale cannot justify refusing to grant a retrospective competency hearing. Many courts have engaged in *nunc pro tunc* competency determinations. *See Renfroe,* 825 F.2d at 767; *Bowers v. Battles,* 568 F.2d 1, 4 (6th Cir.1977), *cert. denied,* 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 409 (1978); *United States*

v. *Makris,* 535 F.2d 899, 904 (5th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).

9. As the district court repeatedly emphasized in erroneously relying upon the *Teague* standard: "Defendant has failed to raise any disorder which would 'unequivocally' or 'positively' demonstrate his incompetence at the time of trial.... [T]he Court is unpersuaded that a negative self-image, impaired motor skills or even a suicide attempt *conclusively* demonstrates Defendant's mental incompetency." Joint App. at 90–91.

For the foregoing reasons, we remand this case to the district court for further proceedings not inconsistent with this opinion.

*REVERSED.*