60 F.3d 826
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory G. GAINES, Defendant-Appellant.
 No. 94-5738.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 7, 1995.
Decided: July 6, 1995.
 
 ARGUED: Robert Leonard Flax, Richmond, VA, for Appellant. Mary Hannah Lauck, Office of the United States Attorney, Richmond, VA, for Appellee. ON BRIEF: Helen F. Fahey, United States Attorney, David T. Maguire, Assistant United States Attorney, Eleni Kousoulis, Third Year Intern, Richmond, VA, for Appellee.
 Before WIDENER and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 The appellant, Gregory Gaines, was convicted of two counts of bank fraud under 18 U.S.C. Secs. 1344, 2. Gaines was sentenced to two concurrent jail terms of one year and one day. Finding none of Gaines' various contentions on appeal persuasive, we affirm the judgment of the district court.
 
 I.
 
 2
 Gaines initiated his fraudulent scheme by opening a checking account at Central Fidelity bank with a $200 cash deposit on August 28, 1992. That same day, Gaines wrote his first check, for $71.36. Just three days later, Gaines began to write a series of bad checks on the account. Without making any further deposits, Gaines wrote a check in the amount of $150 on August 31. On September 4, he wrote a check for $1415, and on September 5, he wrote another for $95. On September 4, Central Fidelity sent Gaines an overdraft notice informing him that the bank had returned the $150 check written on August 31 for insufficient funds.
 
 
 3
 Notwithstanding his receipt of Central Fidelity's overdraft notice, Gaines wrote one final check on the account on September 9, in the amount of $20,000. Gaines wrote this check in the name of Veronica Howard, his girlfriend and the mother of his child. Gaines induced Howard to deposit the check by falsely advising her that the check was backed by funds he had recently received in an insurance settlement. At Gaines' urging, Howard deposited the check in her checking account at Virginia Credit Union (VCU), which credited the check two days later, even though Central Fidelity had not yet made payment on the check. Howard used portions of the $20,000 credited to her account to pay her rent and to make payments on her car loan. This $20,000 transaction between Gaines, Howard, and VCU formed the basis of Gaines' first bank fraud conviction.
 
 
 4
 On September 12, Gaines asked Howard to return some of the $20,000 he had recently given her. Howard wrote Gaines a check for $5,500, backed by the fraudulently obtained $20,000 credit in her account with VCU. Gaines promptly cashed the check at VCU, in exchange for a bank check in the amount of $5,000 and $500 in cash. At the time that Gaines cashed Howard's check, VCU still had not received notice from Central Fidelity that the $20,000 check Gaines had given Howard would not clear due to insufficient funds. Gaines' cashing of Howard's $5,500 check, which he knew to be backed by a fraudulently obtained credit, gave rise to his second bank fraud conviction.
 
 
 5
 Central Fidelity subsequently returned Gaines' $20,000 check to VCU due to insufficient funds. In response to VCU's questions about the validity of his check, Gaines falsely informed the bank that he was expecting an insurance settlement for an arm injury and that he would soon make payment on the check. Gaines, however, had already been compensated for his arm injury sixteen years earlier and was due no further settlement payments. Gaines never deposited funds to cover the check, and the case was referred to the FBI. In an interview with an FBI agent, Gaines confessed that he would not be able to cover the check, that the insurance story was bogus, and that he had been living a lie for the last five years.
 
 
 6
 Gaines was convicted on two counts of bank fraud by a federal jury in Richmond, Virginia, and was sentenced to two concurrent prison terms of one year and one day. Gaines appeals both of his convictions. Finding no error, we affirm.
 
 II.
 
 7
 Gaines contends that his conduct does not amount to bank fraud under the federal bank fraud statute.* He first claims that his bank fraud convictions are invalid because he was merely engaged in check kiting, which, Gaines argues, is not proscribed by the federal bank fraud statute. Second, he contends that because Central Fidelity suffered no financial loss, the bank could not have been defrauded. Both arguments are meritless.
 
 
 8
 With regard to Gaines' first argument, we have squarely held that "check kiting can constitute a 'scheme or artifice to defraud' in violation of Section 1344(1)." United States v. Celesia, 945 F.2d 756, 759 (4th Cir.1991). Gaines' second argument is similarly meritless. The federal bank fraud statute contains no requirement that the bank defrauded actually suffer a loss. All the government must prove to secure a conviction under section 1344 is that a defendant executed, or attempted to execute, a scheme or artifice to defraud a financial institution. In any event, the fact that Central Fidelity suffered no loss is wholly irrelevant, given that Gaines was specifically charged with defrauding VCU, which did in fact suffer a loss due to Gaines' machinations.
 
 III.
 
 9
 Gaines next challenges the district court's denial of his motion for a hearing to determine his competency to stand trial under 18 U.S.C.
 
 
 10
 Sec. 4241(a). A district court is required to grant a defendant's motion for a competency hearing under section 4241(a) if "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. Sec. 4241(a). We review the district court's denial of a request for a competency hearing only for an abuse of discretion. United States v. Mason, No. 93-5520, 1995 WL 265416, at * 2 (4th Cir. May 9, 1995) (citing United States v. West, 877 F.2d 281, 285 n. 1 (4th Cir.), cert. denied, 493 U.S. 869 (1989)).
 
 
 11
 We find no abuse of discretion. The district court found no evidence that the appellant was unable to understand the nature of the proceedings against him, specifically noting that there was no documented history of psychological problems or treatment, and that in addressing the court, the appellant "addressed his remarks clearly and definitively" and "articulated with clarity, with good grammar, with logical thinking and with an awareness of what substance he needed to address when making the statement." J.A. at 383-84. On his own behalf, Gaines presented no documented evidence of incompetency other than unsworn statements by defense counsel. The district court considered appropriate factors in making its determination and acted well within its discretion in concluding that a hearing was not warranted.
 
 IV.
 
 12
 Gaines next contends that the district court erred in not granting Gaines' post-trial motion for a new trial. We review a district court's denial of a motion for a new trial for an abuse of discretion. United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir.1985).
 
 
 13
 After trial, Gaines moved for a new trial, alleging that two contacts between jurors and government witnesses and purportedly improper remarks by the prosecution at closing argument were unduly prejudicial. J.A. at 353-54. The district court acted well within its discretion in denying the motion. The district court had already agreed to grant Gaines' earlier motion for a mistrial based upon the juror-witness contacts, but Gaines decided to withdraw the motion and proceed to a verdict. J.A. at 281-84. The district court had also instructed the jury to ignore the prosecution's allegedly objectionable remarks at closing argument immediately after the remarks were made. J.A. at 309.
 
 
 14
 Gaines contends on appeal that the district court should have granted his motion for a new trial on the ground that he only withdrew his earlier motion for a mistrial on the mistaken assumption that his attorney had offered into evidence unspecified bank records that would have exonerated Gaines. Although Gaines did bring these alleged exculpatory bank records to the district court's attention, he did so in the context of a motion for a continuance at sentencing, and did not present the "missing bank records" argument as a ground for a new trial. J.A. 402-05.
 
 V.
 
 15
 We have considered Gaines' other contentions on appeal and find them meritless. The judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 The federal bank fraud statute provides that
 Whoever knowingly executes, or attempts to execute, a scheme or artifice--
 (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
 shall be fined ... or imprisoned.
 18 U.S.C. Sec. 1344. Gaines was also charged under the federal aiding and abetting statute, which provides,
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principle.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 18 U.S.C. Sec. 2.