**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WARREN G. SMITH,
Plaintiff-Appellant,

v.

No. 97-2786

COLUMBIA GAS TRANSMISSION
CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Robert Earl Maxwell, Senior District Judge.
(CA-96-60-2)

Argued: March 4, 1999

Decided: April 9, 1999

Before HAMILTON and TRAXLER, Circuit Judges, and
LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Brian Joseph Skinner, Elkins, West Virginia, for Appel-
lant. David Steven Russo, ROBINSON & MCELWEE, Charleston,
West Virginia, for Appellee. **ON BRIEF:** William E. Robinson,
ROBINSON & MCELWEE, Charleston, West Virginia; Amos W.
Perrine, III, Legal Division, COLUMBIA GAS TRANSMISSION
CORPORATION, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Warren G. Smith ("Smith") appeals from the district court's enforcement of a settlement agreement reached in connection with his action for employment discrimination against Columbia Gas Transmission Corporation ("Columbia Gas"). Finding no abuse of discretion, we affirm.

I.

Smith, an African-American employee of Columbia Gas, brought an action against Columbia Gas in which he alleged that he was subjected to various forms of racial discrimination in violation of federal and West Virginia law. In particular, Smith alleged that he was denied training and promotion opportunities afforded to employees who were not African-American. Smith further alleged that he was subjected to racially offensive remarks and that his supervisors failed to take corrective action.

The primary events giving rise to the present controversy occurred on March 7, 1997, when Smith and Columbia Gas, at the direction of the district court, attempted to resolve Smith's action by way of mediation. After having spent several hours in mediation, the mediator, along with the parties and their counsel, appeared before the district court to provide a status report. The mediator advised the court that the parties had made significant progress toward reaching a settlement agreement, noting that they were "only a few dollars apart in the scheme of things." The mediator then characterized the parties' dispute over whether the settlement agreement would include a confidentiality provision as "the sticking point." Accordingly, the district court focused entirely upon that issue.

After an extensive discussion with the district court, the parties resumed mediation in an effort to devise a mutually acceptable confi-

2

dentiality provision. Later that afternoon, counsel for the parties informed the court that they had reached a settlement agreement.

David S. Russo ("Russo"), counsel for Columbia Gas, drafted a proposed settlement agreement in connection with the verbal agreement reached by the parties on March 7, 1997. After reviewing the proposed agreement, Stephen G. Jory ("Jory"), counsel for Smith, requested that Russo adopt seven specific revisions, most of which related to spelling, punctuation, or style. Russo revised the proposed agreement in accordance with Jory's requests and then issued a revised draft for review and execution by Jory and Smith.

Jory thereafter contacted Russo and requested that the agreement's confidentiality provision, which limited dissemination of the agreement's terms to specified categories of individuals, be even more specific to ensure that two particular supervisors employed by Columbia Gas would not be advised of the terms. Although Russo did not further revise the agreement, he did assure Jory that the supervisors in question fell outside the scope of the confidentiality provision and, moreover, were not among those individuals to whom Columbia Gas contemplated dissemination of the agreement's terms. Despite these assurances, Smith refused to execute the revised agreement.

Jory subsequently brought a motion for leave to withdraw as counsel for Smith, citing "a vast misunderstanding concerning the terms of the settlement which was announced to the Court on March 7, 1997." In response, Russo moved to enforce the revised agreement.

At a hearing conducted on the pending motions, the district court inquired as to Smith's basis for refusing to execute the revised agreement. In response, Smith indicated that the revised agreement contained no provision regarding Columbia Gas' purported assurance during the March 7, 1997 mediation that he would no longer be subjected to racial discrimination:

> [W]e also, in those mediations on both parts, agreed as part of that mediation settlement that you have there, that these incidents would no longer take place; that they would assure fairness and equal opportunity at that plant. They have not

3

done that. They have not kept to their end of their agreement as well.

Smith indicated further that even after the March 7, 1997 mediation, he had been subjected to mistreatment by his fellow employees and that his supervisors had condoned the same.

After the district court granted Jory's motion to withdraw, Smith retained new counsel and filed an opposition to Columbia Gas' motion to enforce the revised agreement. Smith contended primarily that Jory, in reaching the settlement agreement with Columbia Gas on March 7, 1997, accepted certain terms without first discussing those terms with Smith and obtaining consent. Accordingly, Smith argued, he was not bound by the revised agreement because it did not reflect the terms of settlement as he understood them.

The district court, having determined that there were factual disputes concerning "the existence of a settlement agreement and/or the authority of plaintiff's former counsel to reach a settlement agreement on behalf of the plaintiff," conducted an evidentiary hearing on Columbia Gas' motion to enforce the revised agreement. At the hearing, Russo testified that the revised agreement accurately reflected the settlement agreement reached verbally by the parties on March 7, 1997. Russo's testimony was bolstered by that of Amos Perrine ("Perrine"), who participated in the March 7, 1997 mediation in his capacity as in-house counsel for Columbia Gas. Perrine testified that the revised agreement accurately reflected the verbal agreement reached on March 7, 1997.

The district court then heard testimony from Jory. Jory testified that he and Smith discussed each settlement proposal offered by Columbia Gas. Jory further testified that, at the time the parties appeared before the district court and discussed the dispute concerning a prospective confidentiality provision, he had obtained Smith's consent with regard to each settlement term on which the parties had already reached agreement. Jory then testified, as did Russo and Perrine, that the revised agreement comported with the verbal agreement reached on March 7, 1997. The specific exchange at the hearing was as follows:

4

Q All right. In your mind did that agreement with the changes you suggested in your March 20th letter comport with the verbal agreement that had been made on March 7th?

A Yes, sir.

Q . . . . Was there anything agreed to during the mediation on March 7th, that is not reflected in the draft settlement agreement that Mr. Russo sent you?

A In my mind the answer to that is, that there is nothing in the agreement once it was amended, according to the stylistic changes that I requested, that was not agreed to at the mediation. But I cannot answer the question as to what was in Mr. Smith's mind following mediation.

Jory later testified that Russo "did a commendable job in putting together the document as the parties agreed to."

Smith declined to present any testimony of his own at the hearing. Consequently, Smith provided no evidentiary support for his position that the revised agreement did not reflect the terms of settlement as he understood them. Indeed, Jory's testimony to the effect that he and Smith discussed each settlement proposal and that Smith consented to each settlement term went unrefuted.

The district court ultimately granted Columbia Gas' motion to enforce the revised agreement and dismissed Smith's action with prejudice. This appeal followed.

II.

We review a district court's decision to enforce a settlement agreement for an abuse of discretion. See Young v. FDIC, 103 F.3d 1180, 1194 (4th Cir.), cert. denied, 118 S.Ct. 329 (1997). We may not, therefore, substitute our judgment for that of the district court. See United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995). Rather, we must decide whether the district court's exercise of discretion was arbitrary or capricious in light of the facts. See id.

5

In support of his position that the district court's enforcement of the revised agreement constituted an abuse of discretion, Smith contends primarily that there was not "a meeting of the minds between the parties." Smith also contends that Jory, in reaching the settlement agreement on March 7, 1997, lacked express or apparent authority to do so. We are satisfied that Smith's contentions are without merit.

At the evidentiary hearing conducted in connection with Columbia Gas' motion to enforce the revised agreement, Russo, Perrine, and Jory, each of whom directly participated in the March 7, 1997 mediation, testified that the revised agreement constituted an accurate reflection of the verbal settlement agreement reached by the parties on that date. Indeed, Jory described Russo's effort in drafting a proposed agreement as "commendable."

The district court also heard testimony from Jory concerning his communications with Smith throughout the March 7, 1997 proceedings. In particular, Jory testified that he and Smith discussed each settlement proposal offered by Columbia Gas. Indeed, Jory testified that at the time the parties appeared before the district court and discussed the dispute relating to the confidentiality provision, he had obtained Smith's consent with regard to each settlement term on which the parties had already reached agreement.

Based upon the foregoing testimony, none of which Smith attempted to refute with testimony of his own, the district court could not help but conclude that the parties reached a settlement agreement on March 7, 1997, that the revised agreement accurately reflected the settlement terms, and that Smith authorized Jory to reach agreement on each term. Accordingly, we are satisfied that the district court's enforcement of the revised agreement did not amount to an abuse of discretion.

III.

Finding no abuse of discretion, we affirm the district court's decisions to enforce the revised agreement and to dismiss Smith's action with prejudice.

AFFIRMED

6