UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SUSAN Q. NETTLES,

*Plaintiff-Appellant,*

v.

PROCTOR & GAMBLE MANUFACTURING
COMPANY; PROCTOR & GAMBLE
DISTRIBUTING COMPANY,

*Defendants-Appellees.*

No. 01-2109

Appeal from the United States District Court
for the District of South Carolina, at Beaufort.
Patrick Michael Duffy, District Judge.
(CA-99-4197-9-23)

Argued: February 26, 2002

Decided: April 16, 2002

Before MOTZ, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Daniel Elmer Henderson, PETERS, MURDAUGH, PAR-
KER, ELTZROTH & DETRICK, P.A., Hampton, South Carolina, for
Appellant. Robert Watson Foster, Jr., NELSON, MULLINS, RILEY
& SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appel-
lees. **ON BRIEF:** Ronnie L. Crosby, PETERS, MURDAUGH, PAR-
KER, ELTZROTH & DETRICK, P.A., Hampton, South Carolina, for

Appellant. Susan M. Glenn, NELSON, MULLINS, RILEY & SCAR-BOROUGH, L.L.P., Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellant Susan Nettles sued Proctor & Gamble ("P&G") in the District of South Carolina in 1999, alleging that P&G's Vicks Sinex Nasal Spray caused optic nerve damage resulting in her blindness. In support of her claim, Nettles proffered the expert testimony of Dr. Alfredo Sadun, a neuro-opthalmologist, on the issue of causation of her injuries. P&G responded with a motion to exclude the proposed expert testimony, and it also moved for summary judgment. In exercising its function as gatekeeper under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court found Dr. Sadun's testimony inadmissible and granted P&G's motion to exclude it. Absent this evidence, Nettles was unable to link the nasal spray with her blindness, and the court therefore awarded summary judgment to P&G.

As an elementary legal principle, decisions on the admissibility of expert testimony are committed to the sound discretion of the trial court. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). We have consistently accorded these determinations appropriate deference, *see United States v. Barnette*, 211 F.3d 803, 816 (4th Cir. 2000), given the Supreme Court's admonition that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). A trial court abuses its discretion in excluding expert testimony only if its "conclusion is guided by erroneous legal principles, or rests upon a clearly erroneous factual finding," or if, after considering all the evidence, the

reviewing court possesses a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Even if we "might have ruled differently on the matter in the first instance," *United States v. Dickerson*, 166 F.3d 667, 678 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000), we are constrained by "a significant measure of appellate deference to the judgment calls of trial courts." *United States v. Pittman*, 209 F.3d 314, 316 (4th Cir. 2000); *see also United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995) ("Under the abuse of discretion standard, this Court may not substitute its judgment for that of the district court; rather, we must determine whether the court's exercise of discretion, considering the law and the facts, was arbitrary or capricious.").

In this instance, the court conducted a thorough analysis of the pertinent facts and legal principles, and we are unable to say that its decision against admissibility was either arbitrary or capricious. For example, as required by *Daubert*, the court analyzed the reasoning and methodology underlying Dr. Sadun's opinions in seeking to determine whether they were scientifically valid and properly applied to the facts. *Daubert*, 509 U.S. at 595. In undertaking this review, the court relied upon the lack of peer-reviewed articles linking oxymetazoline (the active ingredient in the nasal spray) with anterior ischemic optic neuropathy (the disease causing Nettles's blindness). Additionally, it considered and weighed the fact that Nettles had only minimal exposure to the nasal spray, and it concluded, in declining to authorize the admission of the evidence, that "the medical causation expert has 'inferred causation' from a situation-specific occurrence."

Upon full and deliberate review of the record in this appeal, along with our consideration of the briefs and argument of counsel, we perceive no abuse of discretion in the court's ruling against the admissibility of this evidence. We therefore affirm its ruling thereon, and its concomitant entry of summary judgment in favor of P&G. *Nettles v. Proctor & Gamble Mfg. Co.*, Order, C.A. 99-4197-9-23 (D.S.C. Aug. 2, 2001).

*AFFIRMED*