**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4424**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

RONALD MCKNIGHT,

        Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:15-cr-00019-RJC-1)

Argued:  December 10, 2019               Decided:  January 2, 2020

Before WILKINSON, THACKER, and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Richard Lamb Brown, Jr., LAW OFFICES OF RICHARD L. BROWN, JR., Monroe, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  ON BRIEF: R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury in the Western District of North Carolina found appellant Ronald McKnight guilty of two bank robberies following a one-day trial. Prior to that, a magistrate judge held a competency hearing and found McKnight competent to stand trial. The judge also, after a separate hearing, granted McKnight's motion to proceed pro se. On appeal, McKnight claims that the circumstances surrounding his request to represent himself should have alerted the court to the prospect that he was no longer competent. For the reasons that follow, we hold that the court did not err by failing to order yet another competency hearing on its own initiative. We accordingly affirm the district court's judgment.

I.

On January 5, 2015, McKnight robbed a bank after passing a teller a note that said, "Robbery 100 50 20 No die . . . packs." J.A. 525. Four days later, he robbed another bank by presenting a similar note to the teller. McKnight was arrested that day, and a grand jury subsequently indicted him for two counts of bank robbery pursuant to 18 U.S.C. § 2113(a).

A.

Shortly after his indictment, the government requested that McKnight receive a psychiatric exam to determine his competency. In support, the government observed that McKnight had previously been found incompetent to stand trial for a different bank robbery, and that McKnight told investigators that he robbed banks on the urging of his deceased father's voice in his head. J.A. 26-27. A magistrate judge ordered the exam.

For roughly six weeks in May and June 2015, clinical staff from the Federal Bureau of Prisons evaluated him. J.A. 447. On June 30, a psychology intern with the Bureau

2

prepared a report concluding that McKnight, a schizophrenic, was "currently . . . incompetent to proceed," because his "delusional thinking" and "distrust toward his attorney" hindered his ability to understand and participate in his defense ("Peters Report"). J.A. 461. The report added that McKnight "could possibly be restored to competency in the foreseeable future" with proper treatment. *Id.* Following a competency hearing in September 2015, the magistrate judge found that McKnight was incompetent to proceed based on these findings and directed further evaluation.

Over the course of four months, the Bureau once again evaluated McKnight's competency. Its efforts culminated in a fourteen-page report issued in April 2016 ("Cunic Report"). J.A. 469. In that report, a forensic psychologist with the Bureau's medical center concluded that McKnight was "competent to proceed in that he understands the nature and consequences of the proceedings against him and is able to assist properly in his defense." J.A. 482.

Three additional points in the Cunic Report bear mention. First, the report underscored the extent to which McKnight was "adept in negotiating sophisticated procedures to achieve specific legal goals." J.A. 481. Not only did McKnight "indicate[] he understood the roles of a judge, prosecutor, and defense attorney," he also was "able to discuss, at length, the actions comprising of his bank robbery" and "articulate his [defense] strategy, wants, and needs clearly and effectively." *Id.* at 481-82. Second, McKnight's mental status was reported to "wax[] and wane[]," "both with and without psychotropic intervention." *Id.* at 478-79. Third, McKnight exhibited a variety of disruptive and abnormal behaviors that he was expected to "continue to engage in . . . as he is awaiting

3

his legal proceedings." *Id.* at 482-83. On this score, the report noted: "If Mr. McKnight perceives that a situation warrants retaliation or manipulation, it is anticipated he will engage in disruptive behavior." *Id.* at 483.

The magistrate judge held a second competency hearing on May 18, 2016. The government, relying on the Cunic Report, represented that McKnight was competent, and McKnight stipulated to the same. J.A. 40. Accordingly, the court deemed McKnight competent to stand trial.

B.

In January 2017, McKnight filed a motion to proceed pro se after the court had successively appointed three different attorneys to represent him. He insisted in the motion that his appointed counsel were "co-conspiring with the prosecutor" to commit heinous acts against him. J.A. 72. McKnight alleged, to wit, that he was "being gas[s]ed in [his] cell thru the air vents by direct orders of the prosecutor," and that he was the target of a "conspiracy to entice, manipulate, and entrap [him] into masturbation" as retaliation for his refusal to plead guilty to the bank robberies. *Id.*

The magistrate judge held a hearing on the motion. After acknowledging the "bizarre allegations" contained therein, J.A. 76, the court conducted the required *Faretta* colloquy to ensure that McKnight's waiver of his right to counsel was knowing, voluntary, and intelligent, *id.* at 79. The government interrupted the colloquy to suggest that the court ask McKnight whether he was taking any psychiatric medications, given that his competency had previously been at issue. *Id.* at 80. In response, the court asked him if he was currently suffering from any mental or physical difficulties. *Id.* at 80-81. McKnight

4

said he was not. *Id.* To boot, over the course of the hearing, McKnight twice affirmed that he was not taking any mental health medications. *Id.* at 80-81, 83.

The magistrate judge granted McKnight's request to proceed pro se on January 25. In its written order, the court noted that his responses during the colloquy demonstrated that he "made a clear and unequivocal as well as a knowing, intelligent[,] and voluntary decision to represent himself and waive his right to counsel." J.A. 97.

McKnight represented himself during a one-day trial in June 2017. The jury found him guilty of both bank robbery counts, and the district court sentenced him to 240 months in prison.

## II.

McKnight now appeals the district court's failure to sua sponte hold a third competency hearing in the aftermath of his request to proceed pro se. We note at the outset that, because his challenge is a "procedural competency claim," McKnight's actual competence to stand trial is not at issue. *United States v. Banks*, 482 F.3d 733, 742 (4th Cir. 2007).

## A.

Whether a district court should order a competency hearing on its own initiative is most naturally looked upon as the kind of judgment call to which the abuse of discretion standard should apply. *United States v. Torrez*, 869 F.3d 291, 321 (4th Cir. 2017). "District courts are in the best position to make competency determinations," *United States v. Bernard*, 708 F.3d 583, 593 (4th Cir. 2013), for they alone may assess a defendant's demeanor in evaluating his "capacity to understand the proceedings and to assist counsel,"

*see Godinez v. Moran*, 509 U.S. 389, 402 (1993).

By statute, a trial court must order a competency hearing on its own initiative if it has "reasonable cause to believe" a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Several factors bear upon this decision, "including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence." *United States v. Mason*, 52 F.3d 1286, 1290 (4th Cir. 1995). The district court is afforded latitude in weighing these factors, given that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

A defendant's burden to succeed on a procedural competency claim is of a part with the discretion afforded the trial court. Specifically, "the defendant must establish that the trial court ignored facts raising a bona fide doubt regarding [his] competency to stand trial." *United States v. Moussaoui*, 591 F.3d 263, 291 (4th Cir. 2010) (quoting *Walton v. Angelone*, 321 F.3d 442, 459 (4th Cir. 2003)). For the reasons set out below, we hold that the trial court did not abuse its discretion in forgoing a third competency hearing.

B.

McKnight argues that the disturbing allegations in his motion to proceed pro se, coupled with his oral representations that he was not taking any mental health medications, should have led the magistrate judge to suspect a possible change in his competency and hence to hold another hearing.

6

We disagree. Take, to start, the allegations in his motion. "Bizarre" as they were, J.A. 76, they are not conclusive of incompetence. We have long recognized that "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Burket*, 208 F.3d at 192. In any event, the fanciful allegations in his motion—*i.e.*, that the prosecutor was gassing his jail cell and pressuring him to commit sexual acts—fell squarely within the realm of conduct that the Cunic Report identified and predicted would continue. *See, e.g.*, J.A. 473-77, 482-83 (observing, among other things, that McKnight asserted that police were tapping his intercom and that staff at his facility sexually abused him). As such, the trial court had little reason to doubt McKnight's competency based on behaviors fully consistent with and anticipated by the Cunic Report's findings.

McKnight's oral representations to the court were similarly unrevealing. On McKnight's telling, his submissions that he did not take any mental health medications were "in direct conflict" with the Peters Report. Appellant's Opening Brief at 8. This because that report averred that his "prognosis is poor in the absence of psychiatric medication." J.A. 461. Whatever the merits of this interpretation, it fails to account for the Cunic Report—which came after a months-long reevaluation of McKnight's competency. That report did not condition his capacity to stand trial on the use of any medication after acknowledging that his "mental status waxes and wanes . . . *with and without* psychotropic intervention." *Id.* at 478-79 (emphasis added). The Cunic Report's conclusion was unequivocal in all events: "Mr. McKnight appears competent to proceed and it is anticipated he will remain competent to proceed for the foreseeable future." *Id.* at 483.

7

In short, nothing McKnight represented to the court should have raised "a bona fide doubt" as to his competency to stand trial. *Moussaoui*, 591 F.3d at 291 (quoting *Walton*, 321 F.3d at 459). Our conclusion is bolstered by the fact that several additional judges, in the course of a number of hearings, had the opportunity to observe McKnight for signs of incompetency and to make further inquiry. None did. Their inaction is telling because competency determinations "at bottom rely not only on a defendant's behavioral history and relevant medical opinions, but also on the district court's first-hand interactions with, and observations of, the defendant." *Bernard*, 708 F.3d at 593.

What is more, McKnight's conduct at trial indicated that, in a very real sense, he was able to assist in his own defense. Representing himself, McKnight cross-examined each of the government's witnesses and testified on his own behalf. He admitted to taking money from the bank tellers but denied using any "force, violence, and intimidation." J.A. 314. To support his theory of the case, McKnight argued that he behaved cordially to each of the bank tellers and omitted any reference to a weapon in the notes he passed them. *E.g.*, *id.* at 286-87, 304-305, 314-15. He also told the jurors, before the court sustained the prosecutor's objection, that the "only reason why [he was] here at trial" was because he believed the prosecutor should have charged him with "the lesser included offense of bank larceny." *Id.* at 314. Plainly, his conduct at trial reinforced the Cunic Report's recognition that McKnight was "adept in negotiating sophisticated procedures to achieve specific legal goals." *Id.* at 481.

For the foregoing reasons, we hold the district court did not err in failing sua sponte to order another competency hearing. The trial court's judgment is hereby

8

AFFIRMED.