PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

BENJAMIN GENERAL, a/k/a Bar-Kim,
        *Defendant-Appellant.*

No. 00-4591

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-99-68-H)

Argued: September 28, 2001

Decided: January 24, 2002

Before WILKINSON, Chief Judge, and WIDENER and
WILLIAMS, Circuit Judges.

---

Affirmed in part and dismissed in part by published opinion. Judge
Williams wrote the opinion, in which Chief Judge Wilkinson and
Judge Widener joined.

---

## COUNSEL

**ARGUED:** Paul K. Sun, Jr., ELLIS & WINTERS, L.L.P., Cary,
North Carolina, for Appellant. Anne Margaret Hayes, Assistant
United States Attorney, Raleigh, North Carolina, for Appellee. **ON
BRIEF:** Janice McKenzie Cole, United States Attorney, Raleigh,
North Carolina, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

On May 18, 1999, a grand jury in the Eastern District of North Carolina indicted Benjamin General for three counts arising from his involvement in a drug trafficking ring. Pursuant to a written plea agreement, General pleaded guilty. General challenges the validity of his guilty plea and his sentence on several grounds. For the reasons that follow, we affirm his conviction and dismiss General's challenges to his sentence.

I.

General and his two brothers, Danny Kennedy General and Tommy Carnel General, were arrested for their participation in a drug trafficking network in Fayetteville, North Carolina that spanned approximately ten years. General was charged with one count of conspiracy to distribute and to possess with intent to distribute cocaine base, cocaine powder, heroin, and marijuana, in violation of 21 U.S.C.A. § 846 (Count One); and two counts of using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C.A. § 924(c)(1) and 18 U.S.C.A. § 2 (Counts Two and Three).

On August 24, 1999, General pleaded guilty to Counts One and Three in exchange for the Government's agreement to drop Count Two. The district court accepted General's plea and approved the plea agreement.

On August 8, 2000, the district court sentenced General to 235 months imprisonment on Count One and 60 months imprisonment on Count Three, to be served consecutively. On August 15, 2000, General filed a notice of appeal to this Court.

On appeal, General raises several challenges to the validity of his guilty plea and to his sentence. We address each challenge in turn.

II.

General first argues that because the indictment did not contain drug quantity and the district court did not inform him that the Gov-

ernment would be required to prove drug quantity beyond a reasonable doubt, his plea is involuntary and, thus, constitutionally invalid under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Typically, we review the voluntariness of a guilty plea de novo. *United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995). Here, however, because General failed to challenge the indictment or otherwise question the nature of his offense before the district court, we review for plain error. *See United States v. Dinnall*, 269 F.3d 418 (4th Cir. 2001). We may notice an error not preserved by a timely objection only if the defendant establishes "that error occurred, that the error was plain, and that the error affected his substantial rights." *United States v. Hastings*, 134 F.3d 235, 239 (4th Cir. 1998). Even when a defendant satisfies these standards, "correction of the error remains within our sound discretion, which we should not exercise . . . unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted) (alteration in original).

   This Circuit has made clear that we look to the sentence that actually was imposed to determine whether *Apprendi* has been violated. In *Promise*, we held that an indictment that does not include drug quantity properly charges an offense under § 841, but that the penalty cannot exceed that attributable to an offense for an unspecified quantity of the drug type alleged in the indictment. *United States v. Promise*, 255 F.3d 150, 160 (4th Cir. 2001) (en banc) (Wilkins, J., joined by Williams and Traxler, JJ.) ("We conclude that the error was not in Promise's conviction. . . . Promise was properly charged with conspiring to violate 21 U.S.C.A. § 841. . . . The problem, therefore, lies with Promise's sentence."); *id.* at 188-89 (Motz, J., joined by Widener, Michael, and King, JJ., concurring in part and dissenting in part, and dissenting in the judgment) ("[A]lthough the government presented the grand jury with an indictment containing only *the elements necessary to charge [the defendant] with a violation of § 841(b)(1)(C)*, the district court sentenced him to the more serious crime defined in § 841(b)(1)(A)." (emphasis added)); *United States v. Cotton*, 261 F.3d 397, 404 (4th Cir. 2001) (noting that this Court determines the offense under § 841 by reference to the sentence imposed), *cert. denied*, 2002 WL 10623 (U.S. Jan. 4, 2002) (No. 01-687). General properly was charged with the offense of conspiring to distribute an unspecified quantity of cocaine base, cocaine powder, heroin, and marijuana, and

his 235 month sentence is less than the statutory maximum for his offense. *See* 21 U.S.C.A. § 841(b)(1)(C) (West 1999). The failure to include drug quantity in the indictment does not invalidate General's guilty plea because drug quantity is not an element of the offense for which he was sentenced. Accordingly, General cannot demonstrate that either his indictment or the district court's explanation of the charges against him was erroneous, much less plainly erroneous.[1]

### III.

General next argues that his five-year supervised release term violates *Apprendi*, contending that § 841(b)(1)(C) allows for a maximum supervised release term of three years. General has misread § 841(b)(1)(C), which clearly provides for a minimum supervised release term of three years, not a maximum. Because General's five-year supervised release term does not exceed the statutory range allowable without regard to drug quantity, *Apprendi* is inapplicable. Indeed, we rejected an identical claim in *United States v. Pratt*, 239 F.3d 640, 648 (4th Cir. 2001). Accordingly, we affirm General's supervised release term.

### IV.

General argues that the district court committed reversible error by failing to advise him during the plea colloquy about the five year mandatory minimum sentence applicable to his firearm charge. *See* 18 U.S.C.A. § 924(c) (West 2000) (providing a five year mandatory minimum for carrying a firearm during and in relation to a drug trafficking offense). As General notes, the district court advised General of the statutory maximums for each count but did not advise him of the statutory mandatory minimums for his firearm offense. Rule 11(c)(1) requires the district court to inform the defendant of a statutory mandatory minimum sentence before accepting a guilty plea. Fed. R. Crim. P. 11(c)(1) ("Before accepting a plea of guilty . . . the

---

[1]At oral argument, General explicitly waived the argument that his guilty plea was invalid because he was threatened with a higher sentence than that which he was eligible to receive. Thus, we do not address whether and to what extent this argument would affect our *Apprendi* analysis.

court must . . . inform the defendant of, and determine that the defendant understands . . . the mandatory minimum penalty provided by law . . . ."). Because General did not seek withdrawal of his guilty plea on this ground in the district court, the violation of Rule 11(c)(1) is subject to plain error review. *United States v. Martinez*, No. 00-4245, ___ WL ___ (4th Cir. Jan. 17, 2002). The district court's noncompliance with Rule 11(c)(1) satisfies the first two prongs of plain error review; thus, we turn to whether the error affected General's substantial rights. *Id.*

In *United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995), we established an analytical framework for evaluating whether the district court's failure to advise the defendant of a statutory mandatory minimum affected the defendant's substantial rights:

> The court must first ascertain what the defendant actually knows when he pleads guilty on the basis of an affirmative indication in the record. Second, the court must decide what information would have been added to the defendant's knowledge by compliance with Rule 11. Finally, the court must determine how the additional or corrected information would have likely affected the defendant's decision.

*Id.* Applying this framework to General's claim, had the district court recited the mandatory minimum during the plea hearing, it simply would have corroborated information already available to General in his plea agreement. When explaining the firearm count, the plea agreement sets forth "the charge, code section, elements, and applicable penalties" and plainly states as follows: "Minimum term of imprisonment: Five years." (J.A. at 17-18.) Thus, the plea agreement provides, in unambiguous and simple terms, all of the information that would have been provided by the district court's compliance with Rule 11(c)(1). *Cf. United States v. DeFusco*, 949 F.2d 114, 117 (4th Cir. 1991) (holding that a Rule 11 violation does not affect substantial rights if the defendant obtains the omitted information from the plea agreement).

Importantly, General does not contend that he did not understand the statutory mandatory minimum sentence as provided in the plea agreement and, therefore, that the district court's recitation of the

mandatory minimum would have aided his understanding of the mandatory minimum. Instead, General asserts that the plea agreement does not cure the district court's error because the information in the plea agreement was incomplete, in that it did not advise him that his sentence for the firearm offense would be required to run consecutively to his sentence for the cocaine trafficking offense. Rule 11, however, does not require a district court to inform the defendant of mandatory consecutive sentencing. *See, e.g.*, *United States v. Ospina*, 18 F.3d 1332, 1334 (6th Cir. 1994) ("[T]here is no requirement in Fed. R. Crim. P. 11 that the court explicitly admonish a defendant that a sentence must be imposed consecutively."). Accordingly, compliance with Rule 11(c)(1) would not have provided General with information regarding the consecutive nature of his sentence. Thus, the consecutive nature of General's sentence is irrelevant to our determination of whether and to what extent the district court's compliance with Rule 11 would have increased General's understanding of the statutory mandatory minimum sentence, in light of the information available to him in the plea agreement.

Additionally, the record does not reflect that any lack of understanding of the mandatory minimum affected General's decision to enter a guilty plea, considering the tremendous sentencing advantage General gained by pleading guilty. In exchange for his guilty plea, the Government dropped an additional firearm charge, which would have carried a mandatory 25-year consecutive sentence. 18 U.S.C.A. § 924(c)(1)(C)(i); *Deal v. United States*, 508 U.S. 129, 134-35 (1993) (holding that the then-existing mandatory 20-year consecutive sentence applies when two firearms offenses are charged in the same indictment). Accordingly, we conclude that the district court's failure to inform General of the statutory mandatory minimum sentence for his firearm offense did not affect General's substantial rights.[2] Therefore, we hold that the district court's error does not warrant reversal of General's firearm conviction.

---

[2] In *Goins*, we reviewed the Rule 11 claim for harmless error; thus, the Government bore the burden of proving that the Rule 11 error did not affect Goins's substantial rights. Because we review General's claim for plain error, he bears the burden of demonstrating the harmfulness of the Rule 11 violation. We note, however, that we would conclude that the error did not affect General's substantial rights under either standard of review.

## V.

General next contends that the district court violated his right to due process when it proceeded with General's guilty plea and sentencing hearings because there was reasonable cause to believe he was, at the time of those proceedings, legally incompetent. *See United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995); *see also Hall v. United States*, 410 F.2d 653, 658 (4th Cir. 1969) (rejecting a challenge to the defendant's legal competency to be sentenced and noting that "the idea of sentencing an insane person to prison remains offensive and is incompatible with the dignity of the judicial process"). The test for determining competency is whether "[a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

"Competency claims can raise issues of both procedural and substantive due process." *Beck v. Angelone*, 261 F.3d 377, 387 (4th Cir. 2001); *see also Vogt v. United States*, 88 F.3d 587, 590-91 (8th Cir. 1996) (noting that the "substantive" competency principle "prohibits the trial and conviction of a defendant who is mentally incompetent," while the "procedural" competency principle requires a hearing to be held upon reasonable doubt of competency, thereby "ensur[ing] that the substantive competency principle is not violated" (internal quotation marks omitted)). An allegation that the district court erred by failing to order a competency hearing is a "procedural competency claim." *Beck*, 261 F.3d at 387. An allegation, on the other hand, that the defendant was convicted or sentenced while legally incompetent is a "substantive competency claim." *Id.*

Congress has established a statutory framework to protect legally incompetent defendants from due process violations. *See* 18 U.S.C.A. § 4241 et seq. (West 2000). General contends that the district court denied him procedural due process by violating the protections established in this statutory framework when the district court accepted his guilty plea without sua sponte ordering a competency hearing and proceeded with his sentencing hearing without granting General's motion for a competency hearing and for further mental evaluations.

We address General's challenge to his guilty plea hearing and then turn to his sentencing hearing.

### A.

Section 4241 protects defendants from being convicted while legally incompetent by establishing that "[t]he district court must sua sponte order a competency hearing if reasonable cause [to question the defendant's competency] is demonstrated." *Mason*, 52 F.3d at 1289; 18 U.S.C.A. § 4241. Whether reasonable cause exists is a question left to the discretion of the district court. *Id.* "Under the abuse of discretion standard, this Court may not substitute its judgment for that of the district court; rather, we must determine whether the court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." *Id.*

General argues that the district court erred by accepting his guilty plea because there was reasonable cause to doubt General's competency at the time of the plea colloquy. The record, however, does not establish any reasonable cause to question General's competency at the time of his guilty plea hearing. In fact, General's counsel informed the district court at the plea colloquy that General had been evaluated for competency and that she was satisfied "after numerous conversations with Mr. General, as well as the evaluation, that [General] is competent to proceed." (J.A. at 28). Thus, we reject General's due process challenge to his guilty plea proceeding.

### B.

General argues that, even assuming his competence at the time of his plea hearing, there was reasonable cause to believe he was incompetent at the time of sentencing and that the district court erred by denying his motion for a continuance of the sentencing hearing for further mental evaluation and for a competency hearing. Our analysis of General's challenge to his competency to be sentenced is governed by 18 U.S.C.A. § 4244 (West 2000). *Mason*, 52 F.3d at 1288 n.2 ("Section 4244 concerns a defendant's competence to be sentenced, whereas § 4241 relates to competence to stand trial.").

General contends that the district court abused its discretion by applying the wrong standard to deny General's motion for a continuance for further evaluations and for a competency hearing. *See Mason*, 52 F.3d at 1290 (noting that, in refusing a competency hearing, "[o]ne of the ways in which a district court may abuse its discretion is in applying erroneous legal principles to the case"). In denying General's motion for continuance, the district court stated that based upon all of the evidence of record, the district court was "satisfied by a preponderance of the evidence that General was not suffering from a mental disease or defect sufficient to justify further delay or further evaluation." (J.A. at 59).

Like § 4241, § 4244 makes clear that General's right to a competency hearing is governed by the reasonable cause standard. 18 U.S.C.A. § 4244 ("[A]t any time prior to the sentencing of the defendant [the district court] shall order . . . a hearing . . . if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect . . . ."). General's substantive claim of incompetency, however, is governed by the preponderance of the evidence standard. *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence."). The district court's use of the preponderance of the evidence standard indicates that it determined that General was substantively competent to proceed to the sentencing hearing, but the district court did not address General's procedural right to a competency hearing. Thus, we review de novo the question of whether reasonable cause existed to question General's competency such that the district court should have held a competency hearing. To determine whether reasonable cause existed, we look to all of the record evidence pertaining to the defendant's competence, including: (1) any history of irrational behavior; (2) the defendant's demeanor at and prior to sentencing; and (3) prior medical opinions on competency. *Mason*, 52 F.3d at 1290; *United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995).

Prior to General's plea hearing, General was evaluated by Dr. James H. Hilkey, who determined General to be competent to proceed. After entering the guilty plea, General's counsel noticed that General's competency was deteriorating and asked Hilkey to re-

examine him. In November 1999, Hilkey advised the district court that General was exhibiting paranoia and loose associations, rendering him unable to assist with his defense and incompetent to proceed to the sentencing hearing. Based upon Hilkey's medical opinion of incompetence, the district court continued General's sentencing to allow for General's mental evaluation at the Federal Correctional Institution at Butner, North Carolina.

After three months of evaluation, Butner's mental health staff issued a report (the Butner Report) advising the district court that, although General had "mild psychosis" upon arrival, he was no longer exhibiting paranoia, loose associations, or other evidence of incompetence. (J.A. at 137-39.) The Butner Report noted General's Full Scale IQ to be 78, which indicates borderline or below average intelligence. *See, e.g.*, *Jones v. Johnson*, 171 F.3d 270, 276 (5th Cir.) ("Even Dr. Landrum's low figures, however, fall within the borderline area between mild retardation (below 70) and dull normal intelligence. We have found that a showing of borderline or below average intelligence does not constitute a showing of mental retardation."), *cert. denied*, 527 U.S. 1059 (1999). The Butner Report also suggested that the indicia of incompetence seen by Dr. Hilkey may have been the result of "wilful manipulation to avoid further legal problems." (J.A. at 139.) It explained this suggestion by noting that General's behavioral problems became worse when he was housed with his brothers, who were dissatisfied with General's decision to cooperate with the Government. Based upon General's overall presentation, the Butner Report concluded that no major mental illness was indicated that would have affected General's ability to consult with his attorney or participate in the sentencing hearing and that General appeared competent to proceed with the hearing. In support of its conclusion, the Butner Report noted that General "identified the two charges to which he agreed to plead guilty," discussed the Government's case against him and his reasons for pleading guilty, showed an "understanding of the court process and the role of the parties, including that of his attorney," and comprehended the possible lengthy sentences he faced as a result of his plea. (J.A. at 137, 139.)

Despite the Butner Report's competency conclusion, in August 2000, General's counsel advised the district court that she did not believe that General was competent to proceed to sentencing and spe-

cifically informed the district court that General was not communicating effectively with her and was, in her opinion, unable to assist in his sentencing proceeding. General argues that counsel's statement is sufficient to establish reasonable doubt, entitling him to a competency hearing and further mental evaluations.

"Medical opinions are usually persuasive evidence on the question of whether a sufficient doubt exists as to the defendant's competence" to require a competency hearing. *Mason*, 52 F.3d at 1290 (internal quotation marks omitted). Here, the Butner Report is entitled to significant weight because it is the most recent and comprehensive evaluation of General's competency. Importantly, General does not dispute or attempt to discredit the Butner Report's methods or conclusions regarding his competency, including its suggestion of General's propensity to engage in "wilful manipulation" to avoid being sentenced. Nor does General allege a change in his mental condition since the time of the Butner Report. Although we credit counsel's statements as true, they do not establish any reasonable doubt as to General's competence when viewed in light of the Butner Report.

Moreover, General's demeanor at sentencing did not support a claim of incompetency. As the district court noted, General was cooperative during the sentencing hearing and informed the district court that he was able to discuss and review the presentence report with his attorney. Further, counsel noted General's specific objections to the presentence report. Accordingly, based upon the totality of the evidence, we conclude that the district court did not err by failing to hold a competency hearing because reasonable cause to believe General incompetent to proceed to sentencing was not established.

With respect to General's claim that the district court erred by denying his request for further mental examinations, § 4244 allows the district court discretion to determine whether mental examinations would aid the court's competency determination. 18 U.S.C.A. § 4244(b) ("[T]he court *may* order that a psychiatric or psychological examination of the defendant be conducted." (emphasis added)); *United States v. Klat*, 213 F.3d 697, 704 n.8 (D.C. Cir. 2000) (noting that the district court's decision to grant additional mental examinations is committed to the district court's discretion). As the district court noted, General had the benefit of three mental examinations

during the course of his proceedings. In support of his motion for further mental examinations, General did not suggest any new evidence or mental condition that had not been addressed in one of these prior three examinations. Thus, the district court did not abuse its discretion by concluding that further mental examinations were unnecessary to resolve General's competency to be sentenced. *Cf. Hall*, 410 F.2d at 657 ("Since the court was thoroughly acquainted with Hall's mental condition, and had recently (during the prior month) been exposed to the testimony of 3 psychiatrists, we are not prepared to say that the court's determination that Hall was competent for sentencing was unwarranted, and we reject Hall's contention that repeated psychological examinations are required by the statute.").

## VI.

General next raises the following sentencing challenges: (1) the district court erred by sentencing General based upon its findings regarding a quantity of cocaine base because the indictment was ambiguous with regard to what type of drug was the object of the conspiracy; (2) the district court's drug quantity calculation to determine his guideline range was erroneous insofar as it was based upon unreliable evidence;[3] and (3) the district court improperly granted General a two-level, rather than a three level, downward adjustment for acceptance of responsibility to his offense level for his conspiracy count. The Government contends that this portion of General's appeal must be dismissed, relying upon the appellate waiver provision in General's plea agreement.[4]

---

[3]General also asserts that the drug quantity calculation violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This argument is baseless, in that we have held that *Apprendi* does not apply to a drug quantity determination under the Sentencing Guidelines where the sentence does not exceed the statutory maximum. *United States v. Kinter*, 235 F.3d 192, 199-201 (4th Cir. 2000). As is noted above, General's 235 month sentence does not exceed the statutory maximum applicable to his offense.

[4]The Government concedes that the waiver does not bar General's challenges to the validity of his guilty plea because, by its own terms, it only prohibits General's appeal of sentencing issues. (J.A. at 14 ("To waive knowingly and expressly the right to appeal whatever sentence is

Whether a defendant has effectively waived his statutory right to appeal his sentence is a question of law subject to de novo review. *United States v. Brown*, 232 F.3d 399, 402 (4th Cir. 2000). General's plea agreement contains a provision stating:

> The Defendant agrees . . . [t]o waive knowingly and expressly the right to appeal whatever sentence is imposed on any ground, including any appeal pursuant to 18 U.S.C.A. § 3742 . . . excepting an appeal . . . based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

(J.A. at 14-15.) During the plea colloquy, the district court first addressed all of the defendants at the same time, explaining their collective general rights and considerations upon entering a guilty plea. While addressing the group, the district court advised that "[u]nder some circumstance, you or the government may have the right to appeal your sentence unless you waive that right to appeal in some type of plea agreement." (J.A. at 26.)

When turning to General individually, the district court directed General's attention to the plea agreement, confirmed that General had an opportunity to read and discuss it with his lawyer before signing it, and confirmed that General understood "all of the words, the language, the sentences, even any legal phrases that were contained" in the plea agreement. (J.A. at 31.) The district court did not, however,

---

imposed on any ground . . . .")); *see, e.g.*, *United States v. Mader*, 251 F.3d 1099, 1103 (6th Cir. 2001) (holding that provision in plea agreement waiving defendant's right to appeal sentence did not waive defendant's right to appeal validity of plea). Additionally, the Government concedes that the waiver does not bar General's challenges to his sentence pursuant to *Apprendi* or because of General's lack of competency, both of which are challenges that are not subject to contractual waivers. *See United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (noting that arguments contending that sentence was imposed based upon constitutionally impermissible factors or that sentence exceeds the statutory maximum are not barred by contractual waivers).

mention the appellate waiver provision or inquire specifically into whether General understood the significance of the waiver provision.[5]

For an appeal waiver to be effective, the record must show that the waiver was based upon a "knowing and intelligent decision." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (internal quotation marks omitted). In *Davis*, we held that the district court's failure to inform the defendant of the appellate waiver provision was relevant to the question of whether the waiver was knowing and intelligent but was not dispositive because the question must be evaluated by reference to the totality of the circumstances, including the "experience and conduct of the accused," as well as the accused's educational background and familiarity with the terms of the plea agreement. *Id.* (internal quotation marks omitted).

Reviewing the totality of the circumstances, we first note that the waiver was unambiguous and was plainly embodied in the plea agreement. Although General has a limited educational background and intellect[6] and the district court did not specifically ask General if he understood the waiver provision, it did inform General of his appellate rights and indicate that those rights could be waived through a plea agreement. Moreover, General was represented by counsel at all times and, as we have discussed at length above, was competent to participate in his defense and consult with counsel. The district court expressly confirmed that General discussed and read the plea agreement with his counsel before signing it and also questioned General

---

[5]As General notes, the current version of Federal Rule of Criminal Procedure 11 provides that, before accepting a guilty plea, the district court "must determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal . . . the sentence." Fed. R. Crim. P. 11(c)(6). The effective date of the amendment was December 1, 1999, and General's Rule 11 hearing took place on August 24, 1999. Even if Rule 11 applied, however, the district court's failure to comply with Rule 11(c)(6) would be subject to plain error review. *United States v. Martinez*, No. 00-4245, ___ WL ___ (4th Cir. Jan. 17, 2002).

[6]As noted earlier, General has a Full Scale IQ of 78, which indicates borderline or below average intellectual capacity, and he dropped out of school after the ninth grade.

regarding his depth of understanding of the terms of the agreement, asking him "when you discussed and read this with your lawyer, did you understand all of the words, the language, the sentences, even any legal phrases that were contained herein; did you understand them?," to which General responded, "Yes." (J.A. at 31.) Because General knowingly and intelligently waived his right to appeal his sentence pursuant to the plea agreement, we dismiss his sentencing challenges.

## VII.

For the foregoing reasons, we affirm General's convictions, hold that General's right to due process was not violated by the district court's handling of his competency challenge, and dismiss General's sentencing challenges pursuant to his plea agreement.

*AFFIRMED IN PART AND DISMISSED IN PART*