**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-5076**

UNITED STATES OF AMERICA,

                  Plaintiff - Appellee,

        v.

DARRYL HANDBERRY,

                  Defendant – Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Greenville.  Louise W. Flanagan,
Chief District Judge.  (4:08-cr-00009-FL-1)

Submitted:  February 26, 2010          Decided:  March 19, 2010

Before GREGORY and AGEE, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Jennifer Haynes Rose, LAW OFFICE OF JENNIFER HAYNES ROSE,
Raleigh, North Carolina, for Appellant.  George E. B. Holding,
United States Attorney, Anne M. Hayes, Jennifer P. May-Parker,
Assistant United States Attorneys, Raleigh, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Darryl Handberry pled guilty to making false statements, in violation of 18 U.S.C. § 924(a)(1)(A) (2006), and possession and receipt of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (2006), while reserving the right to appeal the denial of his motion to suppress evidence seized from his residence. On appeal, Handberry argues that the district court erred in denying his motion to suppress and also contends that the district court clearly erred in imposing a four-level enhancement for use and possession of a weapon during another felony under U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(b)(6) (2007) of the Sentencing Guidelines. For the following reasons, we affirm.

I.

In spring 2007, the Beaufort County Sheriff's Department was contacted by a cooperating witness ("CW"), who informed the Department that he was able to buy cocaine and marijuana from a black male known as "D." On March 27, CW contacted "D," who was later identified as David Pierre, and agreed to purchase cocaine from him at the Clifton Park Apartments. Later that day, CW purchased marijuana and cocaine from Pierre and another, unidentified black male driving a green Jeep. Two days later, CW again contacted Pierre and ordered an

2

"eight ball" of powder cocaine; Pierre told CW to meet him on Bonner Street near 11th Street, and the transaction occurred without incident. Next, on April 2, 2007, CW ordered half of an ounce of powder cocaine from Pierre, who again instructed CW to meet him on Bonner Street near 11th Street.

Finally, on April 9, CW called Pierre around 4:30 p.m. to order three-quarters of an ounce of powder cocaine. Pierre instructed CW to meet him at the Clifton Park Apartments. By this time, the Sheriff's Department was operating surveillance at 1124 Bonner Street, where they believed Pierre was residing. On that day, deputies witnessed Pierre exit the residence and enter a car driven by a white female, identified later as Megan Midyette. Pierre arrived at the Clifton Park Apartments at 5:05 p.m. and completed the transaction with CW, at which point both Pierre and Midyette were detained by deputies. Pierre was arrested and charged with several drug offenses, and Midyette was transported back to the Sheriff's Department after she offered to cooperate with the investigators. At the Department, Midyette told one of the arresting officers that she was at 1124 Bonner Street to purchase marijuana from Pierre and did not know that Pierre was selling cocaine.

While Midyette and Pierre were in transit, other deputies, led by Lieutenant Russell Davenport, returned to 1124 Bonner Street, arriving there at 5:10 p.m. When Davenport

3

approached the house, he heard loud music and knocked on the door without announcing his identity. Receiving no response, Davenport turned an unlocked doorknob and entered the house. Upon entering, Davenport noticed a strong smell of marijuana. Davenport and the other deputies moved into the house, guns raised, and shouted that any individuals in the home should lie down on the floor. The deputies detained two residents, Darryl Handberry, the home's owner, and another individual, Randall Dentley. When deputies pulled Handberry up to handcuff him, they discovered he was lying on a Hi-Point pistol. Once inside the home, deputies also viewed cocaine and marijuana lying on a table in plain view. The deputies performed a sweep of the house to ensure there were no other occupants, and placed Handberry and Dentley in patrol cars.

While deputies remained at the house, Lt. Davenport returned to the Sheriff's Department to apply for a search warrant for the house. The search warrant affidavit described the surveillance of 1124 Bonner Street and identified it as the residence of Pierre, and noted the presence of the green Jeep used in one of CW's buys. The affidavit also stated that deputies watched Pierre leave the residence that day with Megan Midyette to travel to Clifton Park Apartments to complete a drug transaction with CW. The affidavit referenced Midyette's post-detention statement that she went to 1124 Bonner Street to

purchase marijuana but that Pierre first asked her to drive him to the Clifton Park Apartments. Finally, the affidavit described the deputies' securing of the residence under "exigent circumstances." The affidavit stated that while securing the premises Davenport witnessed cocaine, marijuana, digital scales, and a Hi-Point pistol in plain view in the living room.

The search warrant was approved at 7:00 p.m. and was executed by Investigator Boyd. The search eventually produced several items of evidentiary value, including a sawed-off shotgun hidden under the couch and several handguns. During the search, Handberry motioned Investigator Boyd over to the patrol car where he was being detained and asked what was happening. Investigator Boyd informed Handberry that the deputies were trying to ascertain what the guns were doing in the house, and Handberry replied that he purchased the shotgun for protection "off the street" and that the handguns recovered from the house were not his. At the time of this conversation, Handberry had not been read his Miranda[*] rights.

Based upon these events, a federal grand jury sitting in the Eastern District of North Carolina returned an eight-count indictment against Handberry and Pierre. The indictment charged Handberry and Pierre with conspiracy to make false

---

[*] Miranda v. Arizona, 384 U.S. 436 (1966).

5

statements in connection with a firearms transaction, in violation of 18 U.S.C. § 371 (2006) (Count One), and making false statements, in violation of 18 U.S.C. § 924(a)(1)(A) (Count Two), and charged Handberry with possession and receipt of an unregistered firearm—the sawed-off shotgun recovered from the search—in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (Count Three). The five remaining charges referred only to Pierre.

Handberry filed a motion to suppress the evidence seized from his home, contesting the warrantless nature of the initial search. During the suppression hearing, Lt. Davenport testified that it was a common practice for drug dealers in high crime neighborhoods to communicate with each other regarding recent drug arrests in the area. Davenport testified that as a result, the target of a search is often able to destroy or move evidence before a search warrant is obtained. Davenport explained that the arrests of Midyette and Pierre occurred in the parking lot of an apartment complex roughly one-half mile from 1124 Bonner Street, and for that reason, the deputies secured the house before obtaining a search warrant. Davenport also testified that he witnessed another individual under investigation for drug dealing in the parking lot at the time Midyette and Pierre were arrested.

Following this hearing, a magistrate judge issued a written Memorandum recommending denial of the motion. Handberry filed an objection to the magistrate judge's report, but the district court denied the motion to suppress. Thereafter, pursuant to a written plea agreement, Handberry pled guilty to Count Two and Count Three, conditioned on his right to appeal the denial of his motion to suppress the evidence. The district court sentenced Handberry to forty-six months imprisonment and three years of supervised release and Handberry noted a timely appeal.

II.

On appeal, Handberry raises three issues: (1) whether the district court erred in denying his motion to suppress the firearms discovered during the search at 1124 Bonner Street; (2) whether the district court erred in denying his motion to suppress the statements given to Investigator Boyd; and (3) whether the district court clearly erred in adding a four-point enhancement for use and possession of a weapon during another felony under USSG § 2K2.1(b)(6) in sentencing Handberry.

A.

Handberry first argues that the district court erred in denying his motion to suppress. In addressing the denial of such a motion, we review the district court's findings of

7

historical fact for clear error, giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers," and review de novo the ultimate legal conclusion. Ornelas v. United States, 517 U.S. 690, 699 (1996). And, "[b]ecause the district court denied the motion to suppress, we construe the evidence in the light most favorable to the Government." United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004).

In denying Handberry's motion to suppress the firearms seized from 1124 Bonner Street, the district court found that the deputies possessed probable cause to search the residence and that exigent circumstances excused their failure to obtain a warrant prior to entry. In the alternative, the district court found that the independent source doctrine applied because "a sufficient amount of genuinely independent evidence . . . supported the [search warrant] affidavit." Because we agree with the district court that the independent source doctrine applies, we need not address whether exigent circumstances permitted the warrantless entry.

Under the Fourth Amendment, "even when officers have probable cause to believe that contraband is present in a home, a warrantless search of the home is unlawful unless exigent circumstances exist at the time of entry." United States v. Mowatt, 513 F.3d 395, 399 (4th Cir. 2008).

8

In *Murray v. United States*, the Supreme Court recognized that "a later, lawful seizure is genuinely independent of an earlier, tainted one"—and the independent source doctrine applies—unless "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." 487 U.S. 533, 542 (1988) (footnote omitted). The *Murray* Court specifically applied the independent source doctrine to a case in which execution of a search warrant was preceded by an illegal search of the same premises. In such cases, the Court held, the evidence recovered in the later search is not admissible unless the government establishes that "no information gained from the illegal [search] affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." Id. at 540; see United States v. Dessesaure, 429 F.3d 359, 369 (1st Cir. 2005) (similar); United States v. Herrold, 962 F.2d 1131, 1140 (3d Cir. 1992) (similar).

In this case, the magistrate judge and district court both concluded that, even assuming the original warrantless search was improper, the independent source doctrine applied because a "sufficient amount of genuinely independent evidence" supported the search warrant affidavit. On appeal, Handberry

9

argues that, absent the information gleaned from the original search—i.e., the marijuana, cocaine, digital scale and Hi-Point pistol—there was insufficient evidence to support a finding of probable cause.

The determination of whether probable cause exists depends on the totality of the circumstances and involves a "practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Because "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," id. at 232 we "give due weight to inferences drawn from [the] facts by . . . local law enforcement officers," Ornelas, 517 U.S. at 699; see also United States v. Dickey-Bey, 393 F.3d 449, 453 (4th Cir. 2004) ("Under this pragmatic, common sense approach, we defer to the expertise and experience of law enforcement officers at the scene."). "[T]he crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993).

On balance, we agree with the district court that sufficient independent evidence supported the search warrant

10

affidavit. The Sheriff's Department had identified 1124 Bonner Street as Pierre's residence and had engaged in three undercover cocaine purchases from Pierre. The green Jeep used to transport Pierre to one of the purchases was located at the residence. On the day in question, Pierre left the residence and drove directly to the Clifton Park apartments, where he completed the sale of cocaine to CW, suggesting that his cocaine supply was located at 1124 Bonner Street. In addition, Midyette told Investigator Boyd that she went to the residence to purchase marijuana. These facts, all of which were obtained independent of the initial entry and search, support a finding of probable cause.

In addition, ample evidence suggests that the original search did not play a role in Lt. Davenport's decision to seek a warrant. Davenport testified that he believed the 1124 Bonner Street residence needed to be secured because of his concern that another drug dealer would notify the residents of Pierre's arrest. The original search reflected that understanding, as Davenport and the deputies detained Handberry and the other resident, swept the remainder of the house for individuals, and then exited. Other than spotting the items in plain view, no search for contraband occurred. Indeed, the sawed-off shotgun was found during the execution of the warrant and not during the initial search. The scope of this initial search supports the

11

inference that Lt. Davenport would have applied for the search warrant absent the evidence found in plain view. Therefore, the district court did not err in denying the motion to suppress.

B.

Handberry next argues that the district court erred in admitting his statement to Investigator Boyd that he purchased the sawed-off shotgun recovered from the residence. The Government argues that Handberry may not challenge this ruling on appeal by virtue of his conditional guilty plea.

"A voluntary and intelligent plea of guilty is an admission of all the elements of a formal criminal charge, and constitutes an admission of all material facts alleged in the charge." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) (internal quotation marks and citations omitted). "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004). Thus, "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." Id.

Based upon these considerations, "direct review of an adverse ruling on a pretrial motion is available only if the defendant expressly preserves that right by entering a

12

conditional guilty plea" pursuant to Rule 11(a)(2). United States v. Wiggins, 905 F.2d 51, 52 (4th Cir. 1990). "This approach comports with the general rule that conditions to a plea are not to be implied." Bundy, 392 F.3d at 645 (internal quotation marks omitted).

Handberry unconditionally pled guilty to Count Two and conditionally pled guilty to Count Three. The written plea agreement contains the following language:

> The parties agree:
>
> a. Pursuant to the defendant's conditional plea of guilty to [] Count Three of the Indictment herein and pursuant to Fed. R. Crim. P. 11(a)(2), that the defendant reserves the right to appeal from the portion of the Court's adverse decision on Defendant's Motion to Suppress Evidence, filed July 7, 2008, denying the defendant's motion to suppress the sawed-off shotgun obtained during the April 9, 2007, search of the defendant's residence.

(J.A. at 206).

During the Rule 11 colloquy, Handberry stated that he understood the conditional guilty plea he was entering, and the plea agreement specifically conditions the plea to Count Three on Handberry's right to appeal only "from the portion of the Court's adverse decision . . . denying the defendant's motion to suppress the sawed-off shotgun." Nothing during the Rule 11 colloquy suggests that Handberry understood the provision differently or believed that he would be able to appeal the admission of his statement. Accordingly, we agree with the

13

Government that Handberry failed to preserve this issue for appeal.

C.

Finally, Handberry challenges the four-level enhancement for use and possession of a weapon during another felony under USSG § 2K2.1(b)(6). The district court added this enhancement after accepting the probation officer's finding that Handberry permitted Pierre to use one of the handguns during his drug trafficking operation. On appeal, Handberry challenges this finding while the Government contends that the appeal waiver contained in the plea agreement bars consideration of the issue.

A defendant may waive the right to appeal if that waiver is knowing and intelligent. United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). Generally, if the district court fully questions a defendant regarding the waiver of his right to appeal during the Rule 11 colloquy, the waiver is both valid and enforceable. See United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005); United States v. Wessells, 936 F.2d 165, 167-68 (4th Cir. 1991). Whether a defendant validly waived his right to appeal is a question of law that this court reviews de novo. Blick, 408 F.3d at 168. An appeal waiver does not, however, bar the appeal of a sentence imposed in excess of the statutory maximum or a challenge to the validity of a guilty plea. United

14

<u>States v. General</u>, 278 F.3d 389, 399 n.4 (4th Cir. 2002); <u>United States v. Marin</u>, 961 F.2d 493, 496 (4th Cir. 1992).

The plea agreement contained the following appellate waiver:

> The Defendant agrees:
>
> c.    To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all right to contest the conviction or sentence in any post-conviction proceeding . . . excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

(J.A. at 204).

During the Rule 11 colloquy, the magistrate judge specifically referenced the appeal waiver with Handberry, ensuring that he understood its ramifications. Handberry stated, under oath, that he understood the appeal waiver, and there is no suggestion that he was under the influence of drugs or alcohol at the time of the Rule 11 colloquy. In addition, Handberry had three years of college education, and his attorney indicated that he had no difficulty communicating with him.

On appeal, Handberry does not contest any of these facts, and, accordingly, we agree with the Government that this issue, which relates to Handberry's guideline sentence and does

15

not involve any of the exceptions discussed in <u>General</u> or <u>Marin</u>, is clearly covered by the appellate waiver.

## III.

For the foregoing reasons, we affirm Handberry's conviction and sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>