**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4900**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEPHEN ROBINSON, a/k/a Lini,

Defendant – Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  John Preston Bailey, Chief District Judge.  (3:08-cr-00042-JPB-DJJ-1)

Submitted:  September 29, 2010      Decided:  November 5, 2010

Before KING, KEENAN, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Stephen D. Herndon, Wheeling, West Virginia, for Appellant. Betsy C. Jividen, Acting United States Attorney, Paul T. Camilletti, Assistant United States Attorney, Martinsburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Stephen Robinson appeals his conviction and sentence for conspiracy to possess with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B) (2006). For the following reasons, we affirm.

On appeal, Robinson first argues that the district court violated his procedural due process rights by failing to hold a competency hearing prior to trial. "Competency claims can raise issues of both procedural and substantive due process." Beck v. Angelone, 261 F.3d 377, 387 (4th Cir. 2001). An allegation, such as Robinson's, that the district court erred by failing to order a competency hearing is a procedural competency claim. Id. Congress has enacted a statutory framework for addressing competency issues. See 18 U.S.C.A. § 4241 et seq. Under § 4241(a), a court shall order a competency hearing if it has "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Id.

In this case, Robinson moved for a competency hearing and a psychological evaluation the same day he made his initial appearance in court. During that appearance in front of a

2

magistrate judge, Robinson refused to be represented by counsel and refused to answer the judge's questions. Thereafter, Robinson became "aggressive" and had to be restrained by the United States Marshals. Pursuant to Rule 12.2(c)(1)(A), the district court found "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," and thus ordered that Robinson undergo a psychological evaluation to be followed by a competency hearing. The district court denied Robinson's motion as "moot" given its sua sponte order.

Robinson received psychiatric evaluation at FCI Butner, which filed its report on May 26, 2009. The report concluded that Robinson suffered from no mental disease or defect and was competent to stand trial. The report further concluded that Robinson's behavior prompting the evaluation was the result of his views on the federal government and the justice system, not from any mental disease, and that Robinson's condition was not expected to deteriorate. Following receipt of the report, no competency hearing was held, and a jury trial was conducted.

On appeal, Robinson makes a procedural competency claim challenging the district court's "fail[ure] to hold a competency hearing after his mental competency was put in issue." Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000).

3

Robinson bears the burden to show that the district court "ignored facts raising a 'bona fide doubt' regarding [his] competency to stand trial." Id. "'Medical opinions are usually persuasive evidence on the question of whether a sufficient doubt exists as to the defendant's competence' to require a competency hearing." United States v. General, 278 F.3d 389, 398 (4th Cir. 2002) (quoting United States v. Mason, 52 F.3d 1286, 1290 (4th Cir. 1995)).

Because Robinson relies solely on his pre-evaluation conduct in arguing that a hearing was necessary, we conclude that there was no "bona fide doubt" as to Robinson's competency to stand trial in light of the Butner Report. The Butner Report suggests that Robinson suffers from no mental disease or defect and that his court outburst was simply due to a belief system regarding justice in America. The Butner Report concluded Robinson was competent and there was no likelihood that he would become incompetent in the future. Moreover, Robinson's behavior during trial does not support a claim of incompetency. Robinson engaged with the district court as necessary during the trial, and at sentencing Robinson addressed the court in a respectful manner and provided a lengthy allocution prior to sentencing. In sum, given that the Butner Report found no evidence of a mental disease or defect and that no other facts or circumstances support Robinson's claim of incompetency,

4

Robinson's procedural right to a competency hearing was not violated.

Next, Robinson argues that the district court improperly admitted evidence of statements threatening Robinson's co-defendant, Anthony Jackson. After his arrest, Jackson pleaded guilty and agreed to testify on the Government's behalf against Robinson. Then, prior to trial, Jackson sent Robinson's counsel a letter claiming that he had no knowledge of any drug transactions involving Robinson and that any correspondence or conversations between himself and Robinson were not addressing drugs. The Government made reference to Jackson's letter to Robinson's counsel during its opening statement, and then, during its direct examination of Jackson, the Government moved to introduce three letters sent to Jackson. Jackson testified he viewed the letters as a threat to prevent him from testifying against Robinson. The Government does not dispute that the letters were sent not by Robinson but by some of Jackson's acquaintances in Florida to whom Jackson owed money. Robinson objected to their admission, contending that the letters were not relevant. The Government contended that the letters helped complete the story of why Jackson sent a letter to Robinson's counsel indicating Robinson's innocence. The district court overruled the objection and admitted the letters.

We review a district court's evidentiary rulings for abuse of discretion, United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007), and we will not "'vacate a conviction unless we find that the district court judge acted arbitrarily or irrationally' in admitting evidence," United States v. Benkahla, 530 F.3d 300, 309 (4th Cir. 2008) (quoting United States v. Ham, 998 F.2d 1247, 1252 (4th Cir. 1993)). Before the district court, Robinson argued that the threatening letters were not relevant under Federal Rule of Evidence 401. Rule 401 provides for the admission of relevant evidence, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "[R]elevance typically presents a low barrier to admissibility." United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003). Thus, evidence is relevant if it is "worth consideration by the jury" or has a "plus value." United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997) (internal quotation marks omitted).

The Government argues that the letters are relevant impeachment evidence. Federal Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Fed. R. Evid. 607. Thus, although Jackson was the Government's witness, the

6

Government was permitted to impeach him. Prior to trial, Jackson sent Robinson's counsel a letter substantially exonerating Robinson. The Government used the three threatening letters to complete the story behind that letter and impeach its evidentiary value — the letters threatened Jackson if he testified against Robinson at trial. Cf. United States v. Stockton, 788 F.2d 210, 219 (4th Cir. 1986) (evidence of threats against a witness admissible to impeach that witness's inconsistent statements at trial). Because the Government was entitled to impeach Jackson, and because these letters do serve to impeach Jackson's letter exonerating Robinson, the letters were relevant and admissible.[*]

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[*] We also reject Robinson's argument, made for the first time on appeal, that the letters should have been deemed inadmissible under Federal Rule of Evidence 403 because their probative value was outweighed by the potential for prejudice.

7