**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-4648

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL MANDEL TRENT,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Martin K. Reidinger, District Judge.  (3:08-cr-00202-MR-1)

Argued: January 25, 2011          Decided: August 22, 2011

Before MOTZ and WYNN, Circuit Judges, and Irene C. BERGER, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed in part and vacated and remanded in part by unpublished per curiam opinion.

**ARGUED:** Andrew Brady Banzhoff, DEVEREUX & BANZHOFF, PLLC, Asheville, North Carolina, for Appellant.  Kurt William Meyers, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Anne M. Tompkins, United States Attorney, Adam Morris, Assistant United States Attorney, Kelli Ferry, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After a jury convicted Michael Mandel Trent of being a felon in possession of a firearm, the district court sentenced him to 235 months of imprisonment. The court held that Trent's two previous state convictions for fleeing to elude arrest, in violation of North Carolina law, qualified as predicate offenses permitting the application of a sentencing enhancement pursuant to the Armed Career Criminal Act (ACCA). On appeal, Trent challenges both his conviction and sentence. For the reasons that follow, we affirm his conviction, vacate his sentence, and remand for further proceedings consistent with this opinion.

I.

On January 16, 2008, a police officer on routine highway patrol witnessed a green Ford Taurus traveling at a rate of speed below the posted limit. Neither Trent (the driver) nor Kimshon Bennett (the passenger) made eye contact with the officer. After a subsequent check of the license plate led the officer to believe that the vehicle carried insufficient insurance, the officer activated his blue lights and attempted to initiate a traffic stop.

Trent did not stop. Instead, he "immediately sped up" and made a U-turn through a grassy field, running a stop sign and turning onto a two-lane highway. At one point during the

2

ensuing chase, Trent drove faster than 100 miles per hour into oncoming traffic. He eventually lost control of the Taurus and crashed into a commercial storefront.

After the crash, Trent attempted to leave the car through the driver's side door, but an officer positioned his patrol car across that door and obstructed Trent's escape. Trent then slid across the car and, along with Bennett, escaped through the passenger's side door. During Trent's escape from the Taurus, an officer witnessed him fumble and drop an object "about the size of his hand." Trent and Bennett attempted to flee on foot, but the police quickly apprehended them. A subsequent search of the Taurus revealed a handgun lying on the passenger's seat, along with some drug paraphernalia.

Trent and Bennett were charged with violations of state law, and Bennett pled guilty to those state charges. Trent's state charges were eventually dismissed in light of this federal prosecution, in which Trent was charged with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).

At trial, police officers described the car chase and their subsequent discovery of the handgun, and Bennett identified the recovered handgun as one that she had briefly held for Trent the night before. According to Bennett, the gun rested on Trent's lap during the police pursuit, and she refused his request that she "throw it out the window." The Government

3

also introduced evidence relating to two prior instances -- one in 2004 and one in 2005 -- in which Trent threw away firearms while fleeing apprehension for speeding and other traffic violations.

The jury convicted Trent of being a felon in possession. Trent's Presentencing Investigation Report (PSR) concluded that Trent had been convicted of three previous "violent felon[ies]," which mandated an enhanced sentence under the Armed Career Criminal Act (ACCA). Trent conceded that the first conviction, for federal carjacking, qualified as an ACCA predicate. He objected, however, to the conclusion in the PSR that the other two convictions -- the 2004 and 2005 convictions described above for felony speeding to elude arrest in violation of state law --could serve as predicate offenses. The district court overruled his objection and applied the enhancement, which raised Trent's guidelines range from 120-150 months to 235-293 months. The court then sentenced Trent to 235 months of imprisonment.

Trent appeals both his conviction and his sentence.

II.

We first address Trent's conviction. Trent contends that the district court erred in admitting evidence of his prior

4

firearm possession and in denying a motion for psychological evaluation. Both arguments lack merit.

### A.

Federal Rule of Evidence 404(b) prohibits the admission of evidence of a defendant's prior or subsequent acts "to prove the character of a person in order to show action in conformity therewith." Rule 404(b) allows, however, the use of such evidence as "proof of motive, opportunity, intent, or absent of mistake or accident." Trent argues that the district court violated this rule by admitting testimony describing the two previous incidents in which he possessed a firearm.

We apply a four-factor test to Rule 404(b) evidence, holding it admissible if it is: (1) relevant to an issue other than the defendant's character; (2) probative of an essential claim or element of the offense; (3) reliable; and provides (4) probative value not substantially outweighed by its prejudicial effect. See United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997).

In conducting this inquiry, we review the district court's determination for an abuse of discretion. See United States v. Mohr, 318 F.3d 613, 618 (4th Cir. 2003). We afford the district court "wide discretion" in its assessment of "whether evidence is unduly prejudicial," and we will overturn

5

its decision to admit evidence only "under the most extraordinary of circumstances." United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996).

The district court admitted the challenged evidence because it found the evidence relevant to Trent's knowledge of the handgun discovered in the Taurus. We agree with the district court's assessment. The challenged evidence pertained to prior incidents closely resembling the Concord car chase. Indeed, in all three incidents, Trent drove recklessly, wrecked his vehicle, fled on foot from police, and then attempted to dispose of his firearm. Given these similarities, the prior incidents shed significant light on the issue of Trent's knowledge of the firearm ultimately found in the Taurus.

The disputed evidence was also "necessary in the sense that it is probative of an essential claim or an element of an offense." Queen, 132 F.3d at 997 (internal quotation omitted). Trent could not dispute at trial that he drove the Taurus in question or that the police discovered a handgun inside. But Trent did contend that Bennett, not he, bore responsibility for that firearm. Resolution of this issue turned on Trent's state of mind with respect to that firearm, of which the evidence describing Trent's previous acts proved particularly probative. See Huddleston v. United States, 485 U.S. 681, 685 (1988).

6

Trent does not dispute that the prior incidents bear striking similarities to the Concord chase. Nor does he contest the reliability of the evidence describing those previous incidents. He does, however, insist that our previous decision in United States v. Tate, 715 F.2d 864 (4th Cir. 1983), foreclosed the admission of the challenged evidence. In that case, the police stopped Tate, who was driving his wife's car, and discovered two pistols in the trunk. Tate was charged with receipt of a firearm by a convicted felon. Id. at 865. At trial, the district court allowed the Government to introduce evidence that witnesses had previously seen Tate in possession of a different pistol. Id. We vacated Tate's conviction, observing that the "possession by the defendant of a different gun on a previous occasion has no relevance to the issue of whether the defendant knew on the day he was stopped that the two pistols were in the trunk of his wife's car." Id. at 866.

Trent's reliance on Tate is misplaced. This is so because the Rule 404(b) evidence we rejected in Tate bears little resemblance to the evidence that Trent challenges here. In Tate, the challenged evidence concerned a prior incident unlike the one for which Tate was convicted. Here, by contrast, the prior incidents closely resemble the offense of conviction. Accordingly, they illuminate the critical issue of whether Trent

7

knowingly possessed the firearm in the Taurus. See United States v. Oaks, 606 F.3d 530, 539 (8th Cir. 2010).

Nor did the challenged evidence create unfair prejudice that "substantially outweighed" its probative value. Queen, 132 F.3d at 997. Trent contends that this evidence prejudiced him because it "had the effect of corroborating Ms. Bennett's otherwise impeached testimony." Appellant's Br. at 10. Such an effect, however, does not amount to unfair prejudice, which does not include any "damage to a defendant's case that results from the legitimate probative force of the evidence." Mohr, 318 F.3d at 619 (internal quotation and emphasis omitted). Here, the evidence of the prior incidents damaged Trent's case only in that it suggested a legitimate inference that Trent knowingly possessed the firearm inside the Taurus. Moreover, the district court, by properly (and repeatedly) issuing an agreed-upon limiting instruction, ameliorated the risk that the jury would extract a forbidden propensity inference from the challenged evidence. See Queen, 132 F.3d at 997.

Accordingly, the district court did not abuse its discretion by admitting the evidence of Trent's prior firearm possession.

B.

Trent also argues that the district court erroneously denied his motion for a psychological examination. A court may order a psychological examination pursuant to a competency hearing, 18 U.S.C. § 4241(b), which it must conduct "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." Id. § 4241(a). We review a district court's denial of a competency hearing for an abuse of discretion. See United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995).

In determining whether there existed "reasonable cause" sufficient to trigger Trent's right to a competency hearing, "we look to all of the record evidence pertaining to the defendant's competence, including: (1) any history of irrational behavior; (2) the defendant's demeanor [during the legal proceedings]; and (3) prior medical opinions on competency." United States v. General, 278 F.3d 389, 397 (4th Cir. 2002). A review of these factors here demonstrates that the denial of Trent's motion did not constitute an abuse of discretion.

The magistrate judge, in denying Trent's initial motion for a psychological examination, observed that Trent presented only a "self-report" of general "psychological issues." The judge also noted that the Government presented

9

specific evidence -- in the form of Trent's phone calls from jail -- that revealed his comprehension of the charges facing him. The magistrate judge further observed that Trent's behavior in court "evidenced an understanding of the proceedings against him." See General, 278 F.3d at 298 (noting that defendant's "demeanor" undermined his "claim of incompetency"). Moreover, the district court later agreed that "Trent was able to converse with counsel such as to assist in his defense" and that he consequently had received "a very good defense." Given these uncontested findings, and that no formal medical reports supportive of Trent's claims appear in the record, cf. Mason, 52 F.3d at 1290, we cannot hold that the court abused its discretion by rejecting Trent's motion for psychological examination.

III.

We turn finally to Trent's challenge to his sentence. He argues that the district court, in enhancing his sentence under ACCA, improperly relied on two predicate convictions that were not for "crime[s] punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B). We review de novo the question of whether Trent's prior convictions qualify

10

as ACCA predicates.  See United States v. White, 571 F.3d 365, 367 (4th Cir. 2009).[*]

Our recent decision in United States v. Simmons, -- F.3d -- (4th Cir. 2011) (en banc), requires that we vacate Trent's sentence.  There we considered this precise question, i.e. whether a defendant's North Carolina prior conviction was for an "'offense that is punishable by imprisonment for more than one year.'"  Id. (slip op. at 4) (quoting 21 U.S.C. § 802(44)).  In that case, a North Carolina judge had imposed a sentence of six-to-eight months of community punishment, which was the maximum sentence the defendant could have received under North Carolina Structured Sentencing Act.  Nevertheless, this offense would have triggered a sentencing enhancement under prior Fourth Circuit precedent, which had held that a conviction was for "a crime punishable by imprisonment exceeding one year if any defendant charged with that crime could receive a sentence of more than one year."  United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005) (internal quotation and citation omitted).

---

[*]  Alternatively, Trent contends that the same two convictions do not qualify as "violent" felonies under the principles articulated in Begay v. United States, 553 U.S. 137 (2008).  We need not reach this argument.  But see United States v. Sykes, --- S. Ct. ---- (2011).

11

We held in Simmons that the Supreme Court's intervening ruling in Carachuri-Rosendo v. Holder, 130 S. Ct. 2581 (2010) foreclosed us from following our old approach. In light of Carachuri, we concluded that, under the North Carolina Structured Sentencing Act, a defendant is convicted of a crime "punishable" by more than a year only if some offender possessing the same prior record level and convicted of similar aggravating factors could have received a sentence exceeding one year. Id. (slip op. at 14-19). We also held that federal courts must make this determination relying only on facts contained in the offender's "state record of conviction." Id. (slip op. at 27). In Simmons, we examined the defendant's state record of conviction and observed that it contained no findings exposing him to the elevated state sentence necessary to trigger the disputed federal enhancement. Id. Accordingly, we held that the defendant was not subject to the federal enhancement and so vacated his sentence. Id.

Applying the Simmons holding here, we conclude that Trent's two previous convictions were "punishable" by a maximum of twelve months of imprisonment. Both convictions were for speeding to elude arrest, which North Carolina designates a Class H felony. See N.C. Gen. Stat. § 20-141.5(b). In addition, Trent's judgments of conviction reveal that in both cases he possessed a "prior record level" of III and was charged

12

with no aggravating factors.  Given these facts, the Structured Sentencing Act allowed the sentencing judge to impose a maximum possible sentence of twelve months of imprisonment in each case. Id. § 15A-1340.17(c)-(d).  Accordingly, neither conviction for speeding to elude arrest qualifies as a predicate permitting the application of a sentencing enhancement under ACCA.

IV.

For the foregoing reasons, we vacate Trent's sentence and remand for proceedings consistent with this opinion.  We affirm his conviction.

AFFIRMED IN PART AND VACATED
AND REMANDED IN PART